UNITED STATES of America upon the relation and for the use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,

v.

EASEMENT AND RIGHT OF WAY 150 Feet Wide and 3778 Feet Long OVER CERTAIN LAND IN CATOOSA COUNTY, GEORGIA, Cicero C. Gilbert, et al., Defendants.

No. 678.

United States District Court,
N. D. Georgia, Rome Division.

July 28, 1954.

Joseph C. Swidler, Gen. Counsel, TVA; Charles J. McCarthy, Asst. Gen. Counsel, TVA; Thomas A. Pedersen and John L. Murray, Knoxville, Tenn., for plaintiff.

G. W. Langford, LaFayette, Ga., for defendants.

HOOPER, Chief Judge.

This case grows out of proceedings for condemnation of lands brought under the Tennessee Valley Authority Act, 16 United States Code Annotated, Section 831 et seq. A hearing was had before three commissioners appointed pursuant to law, 16 U.S.C.A. § 831, who conducted hearings, heard testimony, viewed the premises and made award to property owners of $3,900, with which property owners are dissatisfied. Property owners also complain of certain rulings by the commissioners to the effect that valuations placed upon the property by the owners' witnesses were rejected by the commissioners.

Both parties to the controversy waived this hearing before a three-judge tribunal and agreed that this court might hear and determine the case alone. The question before this court therefore concerns fair compensation to the owners for the taking by the Government of an easement over their lands for use in connection with transmission lines.

(1) This court will first consider the complaint of the property owners of the rulings by the commissioners in rejecting valuations placed upon the property in question by certain witnesses for the property owners. To make clear this question the following discussion of certain testimony in the record is necessary:

The defendants, Cicero C. Gilbert, et al., were the owners of a tract of land comprising some 200 acres, bounded along its north side by Patterson Road, an unimproved road having along its north side a subdivision belonging to other persons, fronting on Patterson Road and containing on many of these lots very humble dwellings. The Government had taken a strip of land belonging to defendants, abutting on the south side of Patterson Road 150 feet in width, and running along Patterson Road a distance of 3,778 feet, containing approximately 13 and ¾ acres of land. Defendants at the hearing contended that their property, including the aforesaid strip of land, was suitable for subdivision purposes and this court is of the opinion that claim was well-founded, for property north of Patterson Road had been subdivided, and had been built upon, as had also the southern portion of said 200 acre tract, the house in the latter portion nearest Patterson Road being something like 1,400 feet south therefrom. However, defendants' witnesses did not attempt to base the value of the property here condemned upon the basis of its fair market value at the time of taking had it been then sold to a person desiring and intending to subdivide it. Defendants' witnesses on the other hand took as a basis the sales of individual lots on the north side of Patterson Road belonging to others upon a front foot basis, applying that basis to the 3,778 feet frontage of defendants' property along the south side of Patterson Road, giving as their opinion the value of the latter as $22,668. Counsel for defendants on oral argument reiterates that the above valuation should be considered, and in his brief makes reference to the fact that in sales of lots across the road from subject property, prices ranged from $4.60 per front foot to $6.24 per front foot, and the brief recites "based upon these facts they concluded that their property was worth $6.00 per running foot along Patterson Road, making a total value of $6.00 per front foot for 3778 feet, and making a total of $22,668.-00." Contending that use of this land for towers and transmission lines would totally destroy its value defendants seek recovery of the above sum.

That defendants' valuation of their land is made to rest upon an improper basis does not seem open to question. Even if the value of the strip of land, as defendants contended, was totally destroyed and not merely decreased by the presence of the towers and transmission lines, their measure of damages would not be "the value not of the land as a whole and as it then was but as separate lots into which it was supposititiously divided". See United States v. Certain Parcels of Land in Rapides Parish, La., 5 Cir., 149 F.2d 81, at page 82. "Testimony showing how many building lots a tract can be divided into and what such lots could be sold for separately has frequently been held inadmissible in condemnation proceedings. Such testimony is too uncertain and speculative." Spring Valley Waterworks v. City and County of San Francisco, C. C., 192 F. 137, at page 163.

■ The property in question has never been subdivided even on paper. It is adaptable to subdivision, although it would appear from testimony of the mayor that those subdividing it would perhaps have to pay for extension facilities to the property. As stated in the case of United States v. .15 of An Acre of Land, etc., D.C., 78 F.Supp. 956, 957, "the property of the defendant is in its original, raw, undeveloped state. No lots have been staked out, no additional roads to that presently existing have been built, and no water, electricity, or sewer connections have been installed." It is quite apparent, if we assume the property on the south side of Patterson Road is of equal value as that on the north side and these defendants obtained a similar price for their property per front foot as owners of property on the north side obtained for theirs, that defendants would be obtaining retail prices for a sale in gross, and without all of the expenses necessary to be incurred in subdividing the property furnishing necessary facilities and making separate sales of individual lots. It therefore appears that the commissioners correctly rejected the valuation placed upon this property on a front foot basis and not based upon the basis of its fair market value if sold as one entire tract.

■ (2) This court has considered, however, the testimony of all witnesses in the record, and concurs with the commissioners that the award of $3,900 is proper. None of the witnesses in behalf of the plaintiff assess the just compensation at that high a figure and it is greatly in excess of the average amount arrived at by plaintiffs' witnesses. Plaintiffs' witness Argo pointed out the sale of a comparable tract of land of 15.1 acres at $3,250 (about $210 an acre), and giving the fair market value of this tract of 13 and ¾ acres at $300 per acre, a gross sum of $4,025 before construction of the power line, a value of $1,025 after such construction, and resulting decrease in value of $3,000 (see page 115 of the record). Plaintiffs' witness Sliger placed a valuation of $256 per acre as of August 18, 1951 before the power line was built, a decrease in market value by virtue thereof, of 50% and a resulting damage of $1,700. Other witnesses gave different opinions. The three commissioners being unbiased and having had opportunity of viewing the witnesses and the premises, did not blindly follow the opinions of any witness but apparently followed the measure of damages as prescribed by law in such cases, and arrived at their figure. This court after a thorough study of the briefs of counsel, after reading testimony in the case and oral argument, has arrived at the same figure as that adopted by a majority of the commissioners, one of whom dissented.

Counsel for plaintiff may prepare suitable judgment in accordance herewith.