## LEITCH, ET AL. *v.* BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY

[No. 5, September Term, 1967.]

*Decided February 7, 1968.*

*Motion for rehearing filed February 16, 1968; denied February 27, 1968, and opinion modified.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Allan C. Westcott* for appellants.

*Thomas J. Wohlgemuth* for appellee.

FINAN, J., delivered the opinion of the Court.

Appellants, Charles F. Leitch and wife, by contract dated August 25, 1965, agreed to purchase from Mitchell H. Latimer and wife for the sum of $40,000, a 23 acre tract of land in Anne Arundel County located in the middle of several developed subdivisions. There was also a hand written notation on the contract acknowledging the purchasers' understanding that the Board of Education had expressed an interest in acquiring a portion of the tract. The property as of the date of the contract was improved by an extremely dilapidated and vandalized

dwelling and outbuildings. Subsequent to the date of contract, and prior to ultimate settlement on October 11, 1965, the dwelling was rehabilitated sufficiently to obtain financing as improved property and ultimately to house a tenant paying $125.00 per month in rent, although there was testimony that part of the rent was paid by the services of the tenant improving the property. During the period between contract and settlement, the appellee, Board of Education of Anne Arundel County (Board), passed a resolution dated September 1, 1965, resolving that 5.5 acres of the property contracted for by the appellants was a necessary acquisition for expansion of the adjacent Edgewater School property. During this period representatives of the Board communicated offers of purchase to appellant Charles Leitch which offers were characterized by Leitch as "an insult to the amount of money that I have paid for the property." Immediately after settlement, the appellants (the Leitchs having since been joined in purchase by appellants Marcel Bernard and wife) made a counter-offer to the Board in the form of two proposals, one of which redrew the line of taking so as to exclude the dwelling house and consisted of 5.5 acres, asking $32,000.00, the other accepting the line as proposed by the Board but asking $45,000.00, for 5.5 acres.

The Board and the appellants being unable to mutually agree, condemnation proceedings were filed by the Board in December, 1965.

Both parties continued efforts to negotiate a settlement. Each had an appraisal made by a competent real estate appraiser, however, the two appraisals differed by some $12,000. The matter proceeded to trial in June, 1966. At the trial, it was shown that the property was zoned cottage residential and that appraisals were made on that basis.

Mr. Ogle, who submitted appraisals on behalf of the appellee, used five comparable sales including the subject property which showed a range in price per acre from $1,600 to $2,300. His testimony as to the value of the subject property was $1,700 per acre for the land, the 5½ acres amounting to $9,652, and $5,000 for the house and outbuildings and $2,029 for loss of road frontage, making a total of $16,654. Mr. Richebourg, who testified for the appellants, stated that in recent years there had

been no comparable sales of property in the immediate area of the subject property. However, he quoted per acre values from four sales in nearby agriculturally zoned areas, making adjustments in values for adaption to land zoned cottage residential. His values per acre ranged from $1,577 to $3,500.

Mr. Richebourg also endeavored to testify regarding lot sales on the premise that the subject property was zoned for residential subdivision requiring a minimum lot size of 100 by 200 feet. The appellee objected to Mr. Richebourg's so testifying and also objected to his testifying in detail as to the list of all of the properties submitted by him. The court sustained these objections and the appellants made no proffer after the objections were sustained. However, Mr. Richebourg did give an evaluation of the condemned property of $3,000 per acre for a total of $13,500 for 4½ acres; $4,000 for the one acre homesite and $10,097 for the depreciated value of the dwelling and outbuildings, for a total of $27,597 for the condemned property.

The appellant Charles Leitch attempted to testify as to his contract with the Latimers, in an effort to show how the $40,000 purchase price was intended to be broken down as to portions of the property. However, the appellee's objection to this testimony was sustained and the appellant thereafter made no proffer. Judge Childs' instructions to the jury in our opinion were quite adequate; neither party took exceptions to the instructions.

In its inquisition, the jury brought in a value of $16,654, which coincided with Mr. Ogle's appraisal. The court entered a judgment of condemnation for that amount from which the appellants have appealed.

The appellants assign the following reasons for taking this appeal: (1) the exclusion by the court of the testimony of appellants' appraiser, Mr. Richebourg, regarding lot sales in the immediate vicinity of the subject property; (2) the court's alleged preclusion from consideration by the jury of the testimony of Mr. Richebourg relating to the contents of his appraisal report after it was admitted in evidence; (3) the court's sustaining the appellee's objection to appellant Charles Leitch's testifying as to the circumstances surrounding his purchase of

the subject property after such sale had been introduced by the Board of Education as a comparable sale; (4) that the award of condemnation was against the evidence; and (5) the abuse of the court's discretion in its denial of the appellants' motion for a new trial.

We will discuss the merits of the grounds on which this appeal is taken in the order in which they were advanced by the appellants.

i

In the case of *State Roads Commission of Maryland v. Wood,* 207 Md. 369, 114 A. 2d 636 (1955), Judge Henderson speaking for the Court stated:

> "It is likewise conceded that evidence of sale of comparable land is admissible in condemnation cases, and that a wide discretion rests in the trial court as to what is properly comparable." *Id.* at 373, 114 A. 2d at 638.

Also in *Wood,* this Court held that it did not subscribe to the rule that sales of platted lots cannot be used to determine the value of unplatted lots in the same vicinity, stating:

> "We think the rule is stated too narrowly. It is universally recognized that comparisons with sales of similar land may be made, and that the adaptability of the land condemned to development purposes may be considered." *Ibid.*

See also *Lustine v. State Roads Commission,* 217 Md. 274, 280, 142 A. 2d 566 (1958). The Court, however, in *Wood,* stressed that a proper foundation must be laid for such testimony.

Reading the record, it is not clear as to just what Mr. Richebourg was attempting to achieve by his recitation of lot sales. After discussing acreage values, he stated:

> A. * * *. I also considered the sale of lots in—and I'm not comparing lot sales with acreage sales—
> (Mr. Wohlgemuth) Your Honor—
> A. —but if you study this—

(Mr. Wohlgemuth) —at this point I would object if he's not comparing them, I don't think it would be—
(Court) All right, sustained.

Whether the appellee's objection was aimed at the fact that Mr. Richebourg was not using the lot sales for comparison purposes, and accordingly such testimony may have been irrelevant, or whether the objection was prompted by the thought that Mr. Richebourg was endeavoring to introduce "market data" into the record, which with some adjustment may have been pertinent as to the market value of the subject property, is unknown. As stated above, the appellants made no proffer of what they intended to prove by Mr. Richebourg's testimony, and Mr. Richebourg went on to conclude his testimony with a summarization of his evaluation of the subject property. Under the circumstances, we see no reversible error in the court's sustaining this objection.[1]

-----

1. The appellants made no timely proffers (Rule 522b) after the objections to Mr. Richebourg's testimony were sustained. The manner in which an exception to such a ruling of the court is best reserved for appellate review is found in Fowler v. Benton, 229 Md. 571, 575, 185 A. 2d 344 (1962), wherein Judge Prescott states most lucidly an adequate procedure.

"Maryland Rule 522 a and b does not require a formal exception to a ruling of the court, but states that it is sufficient if a party 'makes known to the court the action which he desires the court to take * * *.' A simple and effective manner of preserving for appellate review the correctness of the trial court's rulings when failing to admit offered testimony is for counsel to ask specific questions of a witness, and obtain a ruling by the court on each question * * *; and, if the question itself does not disclose its relevancy, then counsel should call to the court's attention the nature of its materiality. Another easy and also effective method of obtaining appellate review not only of the immediate question asked but also those of a similar nature is, after an objection has been sustained to a question asked, to make a formal proffer of what the witness' testimony would be in answer to the question asked and those of a similar nature, place the proffer in the record, and obtain a ruling by the court on its admissibility."

ii

The contents of the appraisal report by Philip Richebourg, which was the appellants' exhibit F, appears from the record to have been admitted in evidence. It contained a total of fifteen comparable sales for the purpose of providing evidence from which a fair market value of the subject property could be ascertained. Six of the fifteen sales consisted of lot sales. This was the "market data" to which Mr. Richebourg referred when he testified.

The court verbally speculated as to whether or not the jury would read the report page by page. The court then asked Mr. Richebourg to describe the sales which he felt to be the most comparable and this he did. When the court suggested that Mr. Richebourg summarize his testimony rather than go over the sales one by one, the appellants made no objection to this procedure. We do not find that this effort of the trial court to keep the conduct of the trial moving along was in any way prejudicial to the appellants' case.

iii

The court's sustaining of the appellee's objection to appellant Charles Leitch's testimony as to the circumstances surrounding his purchase of the subject property from the Latimers was proper. The appellants introduced the contract of sale into evidence as their exhibit B and it was in the record to speak for itself. *Lanasa v. Beggs,* 159 Md. 311, 151 Atl. 21, 26 (1930). It contained the amount of the purchase price and described the property. It would have been purely self-serving for Mr. Leitch to have been allowed to testify to the undocumented breakdown in his own mind as to how he arrived at the $40,000 purchase price and as to which portion of the property he thought worth more than other portions. It should be borne in mind that this was a contract in which the Board was not a party. It is true the appellee used the purchase price of the entire 23 acre tract as a comparable sale; Mr. Ogle broke it down into $5,000 for the dwelling and $35,000 for the acreage. However, Leitch did testify, without objection, that at the time of the condemnation, he placed a value on the dwelling of $15,000, and on the dwelling and 5.5 acres a value of $45,000. Again,

when the objection to Leitch's testimony breaking down the purchase price into component parts was made, the appellants made no proffer as to what they intended to prove by his testimony. We do not think the sustaining of the objection was reversible error.

iv

The only question regarding the evidence in this case, insofar as the verdict is concerned, to which this Court should address itself is whether there was legally sufficient evidence to support the verdict. We think there was. In *Bergeman v. State Roads Commission,* 218 Md. 137, 144, 146 A. 2d 48, 52 (1958), this Court stated:

> "It is trite to observe that the weight of evidence is for the triers of fact, or for the court on motion for new trial. We are only concerned with the legal sufficiency of the evidence to support the verdict, and in passing upon that question the testimony, and all proper inferences therefrom, must be considered in a light most favorable to the plaintiff's case."

See also 5 Nichols, *Eminent Domain* § 17.1(4) (3d ed. 1962):

> "In those cases where the question of *quantum* may be the subject of review upon appeal, the appellate court, too, is reluctant to interfere with the decision of the lower tribunal. Such decision will ordinarily not be disturbed unless the amount of the award is obviously and grossly inadequate or excessive. In the face of conflicting evidence the appellate court will generally refuse to modify the decision so long as there is some evidence to support the decision. The court will not, so long as the award is within the range of credible testimony, reweigh the evidence or retry the facts."

v

The appellants in their motion for a new trial stressed the prejudice which was done to their case because of the absence of appellant Charles Leitch from the courtroom, due to his misunderstanding the instruction of the court calling for the se-

questration of non-party witnesses. The record shows that Leitch was not sitting with his counsel at the time the court gave this directive: "All witnesses other than actual parties who are about to testify in this case are requested to remain outside the courtroom until called." Leitch thereupon left the courtroom with other witnesses. However, the other three appellants remained in the courtroom and apparently it was not until some time later that the appellants' counsel discovered Leitch's absence, and that he had not received the benefit of evaluating the testimony of other witnesses.

It is unfortunate that Mr. Leitch assumed the instruction to be directed at him, but we fail to see how his misinterpretation constituted any error on the part of the court. It certainly would have been easy for Leitch to inquire of his counsel whether the court's instruction was applicable to him.

The rule that the granting of a motion for a new trial rests with the sound discretion of the court is so well established as not to require elaboration. See *Brinand v. Denzik,* 226 Md. 287, 173 A. 2d 203 (1961). We find nothing even approaching an abuse of discretion in the lower court's denial of the appellants' (defendants') motion for a new trial.

Being mindful that at no time did the appellants make any proffer of what they intended to prove by any of the witnesses, after objection to their testimony was sustained by the court, and further being aware that they offered no exception to the instructions given by the lower court, we find no merit to any of the grounds on which they have based their appeal. The judgment of the lower court is affirmed.

> *Judgment affirmed, appellants to pay costs.*