# CHARLES J. BONAPARTE

## *vs.*

## THE MAYOR AND CITY COUNCIL OF BALTIMORE

*Condemnation of land: compensation to owner.   Prayers.   Mar-*
*ket value: special uses or value; sales of similar lands in*
*vicinity; sales to avoid condemnation; not evidence.*
*Commissioners for Opening Streets:*
*effect of return.*

Where property is condemned for public improvements, the
measure of compensation to which the owner is entitled, is the
actual market value of the property; any special utility which
may tend to enhance the value in the market is a proper claim
to be considered.

A building was condemned for the widening of a street; it
had already been prepared for use as an apartment house, the
use for which it was best fitted, although at the time it was not
being so used; the owner offered a prayer to the effect that, in
estimating the value of the property and the amount to be
awarded the jury must consider all the uses to which the said
property could have been applied had no such public improve-
ment as that for which it is taken been determined upon by the
Mayor and City Council, and must award the appellant what
they believe would have been its value under the circumstances
mentioned, if employed for the most profitable use for which
they may find it could have been applied, whether it has in
fact been applied to such use or not: *Held,* that the owner had
the right to have clearly presented to the jury an instruction
based on that theory, and, as none of the granted prayers cov-
ered it, its refusal was reversible error.                pp. 82-84

Valuation of property for condemnation purposes must dis-
regard the effect of the public project for which the property
is required, but must take into consideartion all the uses to

which it is capable of being applied at the time of the appropriation and which affects its marketability.                     p. 83

In an investigation as to the market value of land, the prices realized from voluntary sales of similar lands in the vicinity may be proven either on direct or cross examination of witnesses conversant with the facts.                     p. 85

But a sale made in order to avoid condemnation proceedings is not a voluntary sale within the meaning of this rule.     p. 85

Sect. 175-C of the Charter of Baltimore City, as enacted by Chapter 125 of the Acts of 1914, to the effect that in condemnation proceedings the return of the Commissioners for Opening Streets shall be *prima facie* evidence of the correctness of the amount of damages awarded, does not violate the owner's right to prove, or the duty of the jury to determine, the true amount of the just compensation to be awarded.                     p. 86

*Decided June 27th, 1917.*

Appeal from the Baltimore City Court.   (HEUISLER, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Charles J. Bonaparte* and *Paul M. Burnett*, for the appellant.

*George Arnold Frick, Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The property of the appellant, known as No. 407 St. Paul street, in the City of Baltimore, is required by the city for the widening of the street in pursuance of ordinances providing for that improvement. In the proceeding for the con-

demnation of the property, which consists of a lot of ground, owned by the appellant in fee simple and improved with a building used for residence purposes, the Commissioners for Opening Streets awarded to the owner, as full compensation for the property taken, the sum of $5,335.85. On appeal by the owner to the Baltimore City Court, the award was increased to $6,700 by the verdict of a jury. Believing this revised valuation to be still inadequate, the owner has brought the case to this Court for the review of certain rulings to which he excepted on the theory that they had the effect of unduly restricting the award.

It was proved that the appellant has expended in the purchase and permanent improvement of the property at least the sum of $11,000. The building has been rented as a whole to successive tenants. Extensive alterations and additions made by the appellant have adapted the building to use as an apartment house, though it has not actually been devoted to that purpose. The real estate experts who testified in the case based their valuations partly upon the capitalization of the rent currently received from the property. The estimates of the city's experts varied from $5,980 to $6,075, while the experts produced by the appellant valued the property at amounts ranging from $7,500 to $8,600. One of the latter testified that the building was well adapted to apartment house uses, and that if thus employed, it would yield rentals indicating a property value of $9,200. In view of this testimony the appellant, by his second prayer, requested an instruction to the jury that "in estimating the value of the property and the amount to be awarded to the appellant as its owner, they must consider all the uses to which the said property could have been applied had no such public improvement as that for which it is taken been determined upon by the Mayor and City Council, and must award the appellant what they believe would have been its value under the circumstances mentioned, if employed for the most profitable use for which they may find it could have been applied,

whether it has in fact been applied to such use or not." This prayer was refused.

The measure of the compensation to which the appellant is entitled in this proceeding is the actual market value of the property condemned. Its market value depends upon the uses for which it is available, and any special utility which may tend to enhance its value in the market is a proper element to be considered. The availability of the property for a particular use, contributing to its market value, is not to be ignored merely because it has not in fact been applied to that use. The valuation for condemnation purposes must disregard the effect of the public project, for which the property is acquired, but must take into consideration all the uses to which it is capable of being applied at the time of the appropriation and which affect its marketability. *Consolidated G. E. L. & P. Co.* v. *Baltimore,* 130 Md. 20; *Baltimore* v. *Carroll,* 128 Md. 73; *Brack* v. *Baltimore,* 125 Md. 378; 128 Md. 437; *Baltimore* v. *Garrett,* 120 Md. 613; *Callaway* v. *Hubner,* 99 Md. 529; *Baltimore* v. *Smith,* 80 Md. 458; *Patterson* v. *Baltimore,* 130 Md. 645.

Applying the principles just stated to the present case we think the prayer we have quoted should have been granted. There is uncontradicted evidence that the appellant's building, as now constructed, is specially adapted for use as an apartment house, and that its availability for such use adds to the present rental and market value of the property. This element of value arises from the existing plan and structure of the building. It is not contingent upon any material change of conditions with respect to the land or the improvements. It is based upon a practical and present utility which, as the evidence tends to show, directly and immediately affects the value of the property in the open market. The fact that the building has been devoted to a less profitable use than the one for which it is shown to be specially designed does not preclude the owner from being paid for his property upon the basis of its actual market value for the most profitable use to which it is now adapted. This was the

theory of the proposed instruction, and we think the appellant was entitled to have it distinctly stated to the jury. It was not so presented by any of the granted prayers.

There were eight prayers offered on behalf of the appellant, three of which were refused, including the one to which we have referred. We find no error in the rulings on the other rejected prayers. The instructions proposed by the city were properly granted. The first was the only one subjected to criticism as to its form. It instructed the jury that the market value of the property condemned should be estimated as of the time of this proceeding and without reference to any change in the value of the property which may have been occasioned by the fact that St. Paul street is to be widened and opened, and that "in other words, the jury are to consider its value as though no such opening were to take place, and the surroundings immediately preceding such opening were to continue indefinitely." The latter part of the prayer, which we have quoted, is objected to on the theory that the word "surroundings," as therein employed, had reference to the existing utilization of the building, and that the prayer had the effect of instructing the jury that no other use of which it was susceptible could enter into their appraisement. This is not our understanding of the purpose and meaning of the prayer. Its object was to emphasize the rule that the jury were not to regard any change of value resulting from the street improvement for which the property is being condemned, but that they were to estimate the value as though the street were not to be widened and its pre-existing situation in reference to the property were to continue. As thus understood the prayer is not objectionable.

Two exceptions were reserved to the exclusion of evidence offered by the appellant. One was rendered immaterial by the admission of the same proof at a later stage of the case. The other exception was taken to the refusal of the Court to allow the appellant to prove the price at which a neighboring property had been bought by the city for the purposes of the street improvement for which the appellant's property is

being acquired.  This proffer was made as part of the cross-examination of a witness for the city who had testified to a former sale of the other property mentioned as reflecting upon the value of the property involved in this proceeding. Objection was made to the proposed inquiry on the ground that the sale to which it referred was not voluntary, but was made with a view to obviating the impending condemnation, and was therefore not a reliable indication of the real value of the property.  It is a settled rule that in an investigation as to the market value of land, the prices realized from voluntary sales of similar land in the vicinity may be proven either on direct or cross-examination of witnesses conversant with the facts.  *Patterson* v. *Baltimore,* 127 Md. 241; *Baltimore* v. *Smith,* 80 Md. 473.  The sale to which the exception refers was evidently not a voluntary sale within the meaning of the rule just stated.  The reasons for the exclusion of such a sale, as evidence of value, are well stated in a discussion of the question in *Lewis on Eminent Domain,* 2 Ed., sec. 447, as follows: "What the party condemning has paid for other property is incompetent.  Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise.  They are affected by an element which does not enter into similar transactions made in the ordinary course of business.  The one party may force a sale at such a price as may be fixed by the tribunal appointed by law.  In most cases the same party must have the particular property, even if it costs more more than its true value.  The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property."  The view that such sales are not competent evidence of value is well supported by adjudications." *Cobb* v. *Boston,* 112 Mass. 181; *Providence & W.. R. Co.* v. *Worcester,* 155 Mass. 40; *Peoria Gas Light Co.* v. *Peoria Term. Ry. Co.,* 146 Ill. 372; *Chicago & Alton R. R. Co.* v. *Scott,* 225 Ill. 352; *Howard* v. *Providence,* 6 Rhode Island, 516.

The city's third prayer refers to the provision of section 175-C of the City Charter, as enacted by Chapter 125 of the Acts of 1914, to the effect that the return of the Commissioners for Opening Streets is *prima facie* evidence in the case of the correctness of the amount of damages awarded, and the burden of proof is on the party asserting that the amount should be less or more than that reported by the Commissioners.    It is suggested that this provision is in violation of section 40 of Article 3 of the Constitution of the State, which requires the payment of "just compensation" in such cases" to be agreed upon by the parties or awarded by a jury."   The appellant's right to a jury trial, upon the question as to the compensation to be awarded him for the property condemned, is specifically secured by section 179 of the City Charter, and in our judgment that right is not prejudiced by the section first cited.   The purpose of section 175-C is simply to attach the presumption of correctness to the report of the Commissioners, as against an appeal by either the city or the property owner.   This regulation is entirely consistent with the right afforded the owner to prove, and with the duty imposed upon the jury to determine, the true amount of the just compensation to be awarded.

The rulings are all approved except as to the refusal of the appellant's second prayer.

*Ruling reversed, with costs and case remanded for a new trial.*