# D'ARAGO *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 182, September Term, 1961.]

*Decided May 3, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Samuel Intrater,* with whom was *Albert Brick* on the brief, for the appellant.

*T. Thornton Murray, Special Attorney,* with whom were *Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by a landowner, S. Miller D'Arago, from a judgment in her favor of $37,500 for the taking of approximately 8.1 acres in fee and 0.1 acres in easements for construction of a part of new relocated Route 4, a limited access highway, in Prince George's County. The judgment was entered upon a jury's inquisition in a condemnation suit brought by the State Roads Commission ("the Commission") on December 20, 1957.

The appellant presents two contentions. The first is that she is entitled to access to the new highway cutting across her property or is entitled to damages for the denial of access thereto, and that the trial court erred in holding otherwise. Her second contention is that the trial court erred in replying to an inquiry of the jury with regard to the effect of a conditional contract, since the contract was not conditional, and she asserts that the court should have so advised the jury.

The appellant and her father, Pietro D'Arago, were the owners in 1956 of a more or less oblong tract of about 106 acres of land, which had a frontage of some 1400 feet on the south side of the Marlboro Pike (old Maryland Route 4) and which extended south for more than 3000 feet. There is evidence that in March, 1956, the D'Aragos entered into a contract (not put in evidence) with a corporation known as Parkell, Inc. for the sale of about 73.67 acres of this land, including the entire Marlboro Pike frontage. This tract was rezoned to a depth of 1400 feet from residential to commercial use

in the summer or fall of 1956. On December 31, 1956, the D'Aragos conveyed approximately 24½ acres of the land at the northeast corner of the D'Arago property, having a front-age of about 700 feet on the Marlboro Pike and a depth of 1400 feet, to Giant Food Properties, Inc., as assignee of Parkell, Inc., for use as a shopping center. Exactly one year later (December 31, 1957), the D'Aragos conveyed the re-maining 49.15 acres (more or less) of the 73.67 acre tract to Purity Farms Shopping Center, Inc. (Purity Farms), to which the contract of sale had apparently been assigned by its parent corporation, Giant Food Properties, Inc. Purity Farms paid only a small part of the purchase price in cash and gave its note secured by a deed of trust for the balance. The 49.15 acre tract acquired by Purity Farms was "L" shaped. The long side of the "L" had a frontage of about 700 feet on the Marl-boro Pike adjoining (to the west) the 24.5 acre tract con-veyed to Giant Food Properties, Inc., and the short side lay behind the 24.5 acre tract. The 49.15 acre tract extended south-ward, both back of the 24½ acre lot and back of its own front-age on the Marlboro Pike, to (and at one corner beyond) the southern boundary of the land taken by the Commission for the relocation of Route 4, the new limited-access highway. It included all of the land covered by this condemnation suit. A small roughly triangular corner (containing less than one acre) of the 49.15 acre tract lies to the south of the new Route 4, which it borders for about 300 feet. The Commission (at some time not shown) installed a service road running east and west, adjacent to and parallel with the new limited-access right of way, for a distance of roughly 1000 feet from the eastern boundary of the entire 1956 D'Arago tract. This serv-ice road curves southwestward approximately 300 feet from the western D'Arago boundary, and the triangular slice of less than one acre lies between the two roads. Its western side is about 125 feet long.

This service road, which apparently connects with a public road at some unspecified point, gives access to the little tri-angle and to the land originally owned by the D'Aragos lying to the south of the service road (and south of the new Route 4). The land south of the service road was apparently sold by

494

the D'Aragos to a third party during the pendency of this case. The controversy over damages for non-access to the new highway does not appear to concern either that tract or the small triangle south of the new Route 4. Because of the new service road, there is, of course, no claim that the tracts are now landlocked. The denial of access of which the appellant complains pertains to the "L" shaped tract north of the new Route 4.

At the time this suit was filed, the appellant and her father, Pietro D'Arago, were named as defendants, and Giant Food Properties, Inc., described as "contract purchaser" of the land, was also made a defendant. On June 4, 1959, Purity Farms, assignee of Giant Food Properties, Inc., having defaulted on one or more payments secured by the deed of trust above referred to, conveyed the 49.15 acre tract to the appellant in lieu of foreclosure. Why the appellant's father was not also a grantee is not shown. As a result of a petition filed by the appellant, the names of Pietro D'Arago and Giant Food Properties, Inc., were (apparently) stricken from the case as defendants.

Turning to the appellant's first contention, it is clear that there never was any public road or right of way where the new Route 4 is now located. Hence, it is obvious that the appellant was not deprived of any easement of access to a highway which had previously been appurtenant to her land. We find her claim for damages based upon denial of access to a new, limited-access highway, which did not replace or supersede any previously existing road, to be untenable.

Although the origin of the right of access to public streets inhering in abutting property owners is said to be obscure (see *Bacich v. Board of Control*, 23 Cal. 2d 343, 350, 144 P. 2d, 818), it is a well established right in the nature of an easement appurtenant to the abutting land on an existing highway, and a condemnee is entitled to compensation for the taking thereof. *State Roads Comm. v. Franklin*, 201 Md. 549, 558-59, 95 A. 2d 99. See also *De Lauder v. Baltimore County*, 94 Md. 1, 50 A. 427; *Sanderson v. Baltimore*, 135 Md. 509, 109 A. 425; *Brack v. Mayor & C. C. of Baltimore*, 128 Md. 430, 97 A. 548; *Webb v. Baltimore & O. R. Co.*, 114 Md.

216, 79 A. 193; *Baltimore Belt R. Co. v. McColgan,* 83 Md. 650, 35 A. 59.

It has, however, frequently been held that there is no right to consequential damages to the land not taken for lack of access to a new limited-access highway built where no road existed before. The reasoning is simple. At the time of the taking, there is no easement of access to the new road inuring to the benefit of the abutting land not taken. No existing right has been taken. And, of course, none will accrue in the future because, when the new road is declared to be one of limited-access, no easement of access by implication can arise in the face of that contrary declaration. See 3 Nichols, *Eminent Domain* (3rd Ed., 1962 Cum. Supp.), § 10.2211, p. 65 and n. 8.9 thereto; *Annotation,* 43 A.L.R. 2d 1072, § 6, and cases cited; *Riddle v. State Highway Comm.,* 184 Kan. 603, 339 P. 2d 301; *State v. Calkins,* 50 Wash. 2d 716, 314 P. 2d 449; *Pennysavers Oil Co. v. State* (Tex. Civ. App.) 334 S. W. 2d 546; *Lehman v. Iowa State Highway Comm.,* 251 Ia. 77, 99 N. W. 2d 404; *Schnider v. State,* 38 Cal. 2d 439, 241 P. 2d 1, 43 A.L.R. 2d 1068; *Winn v. U. S.,* 272 F. 2d 282 (9th Cir.) ; *State v. Clevenger,* 365 Mo. 970, 291 S. W. 2d 57; *Carazalla v. State,* 269 Wisc. 593, 70 N. W. 2d 208, 71 N. W. 2d 276. *Contra, St. Clair County v. Bukacek,* 272 Ala. 323, 131 So. 2d 683, which distinguishes cases following the majority rule on the basis of Alabama law, which appears to differ from ours. We do not find the case persuasive. Commentators have reached the same conclusion as the great majority of cases. See Jahr, *Compensable Damages Due to Construction of Limited Access Highways,* in Southwest Legal Foundation, 1960 *Institute on Eminent Domain,* 77, 80, 85; Clark, *The Limited-Access Highway,* 27 Wash. L. Rev. 111; Cunnyngham, *The Limited-Access Highway from a Lawyer's Viewpoint,* 13 Mo. L. Rev. 19; *Note,* 3 Stan. L. Rev. 298, 308. Cf. Bowie, *Limited Highway Access,* 4 Md. L. Rev. 219, for a discussion of the general problems such highways present. The trial judge was entirely correct in instructing the jury that there could be no compensation for loss of access to new Route 4. No other point with regard to damage to the property not taken has been raised.

We think, however, that on the record as submitted to us, the appellant is entitled to prevail on her second point. After having deliberated for three hours, the jury sent to the judge a note containing two questions to which they requested answers. Both questions related to the requirements for establishing the market value of condemned land by evidence of other contracts to buy the same, or similar, property. The second question, the answer to which is objected to by the appellant, was: "If there is an offer and a willing seller, but there is a condition attached by the buyer which is accepted by the seller, and the condition is not met, can the offer be accepted as fair market value without regard to the condition?" The judge answered as follows: "No. If the condition is part of it, then it goes right with it. If the offer is made with the condition attached to it you can't ignore the condition and accept the offer without the condition." Counsel for the appellant thereupon objected on the ground that there was no evidence in the case of any contract or offer with a condition attached to it. The record makes it clear that he was correct.

To establish a valuation for the land taken, the appellant introduced evidence to the effect that the contract for the sale of 73.6754 acres of the tract of which the condemned land forms a part provided for an average price of about $12,300 an acre. The evidence further showed that the price of the 24.5 acre tract sold to Giant Properties, Inc. on December 31, 1956, was $275,000 or nearly $11,250 per acre. Evidence was also admitted showing that the consideration for the deed of December 31, 1957, to Purity Farms was about $600,000, or perhaps a little more. The average price was approximately $12,500 per acre. It appears that only a small part of the purchase price was paid in cash. A note in the principal amount of $582,335 calling for annual payments on account of principal of $50,000 and interest on successive unpaid balances, was given the D'Aragos for the balance, with final maturity of the note in 1964. This note was secured by a deed of trust covering the 49.15 acres from Purity Farms, as party of the first part, to trustees therein named as parties of the second part. It contained, inter alia, a clause reading as follows:

"'The parties of the second part [the trustees] agree to release from the effect and operation of this Deed of Trust, without any payment having been made on account of the principal indebtedness secured hereby, approximately eight (8) acres of the herein described property which the party of the first part will grant to the Maryland State Roads Commission for Pennsylvania Avenue and the Service Road, in exchange for the State Road Commission's agreement to extend Kentucky Avenue to the D'Arago property line provided same is amended to require construction of said extension of Kentucky Avenue at the same time that said Pennsylvania Avenue is constructed, in accordance with State Road Commission's option contract dated December 31, 1957."

(The record does not show the location of the named avenues.)

At the time the deed of trust was introduced into evidence, counsel for the Commission objected because, he argued, the foregoing paragraph created a condition to the *sale* which could not be performed, and that therefore "[t]here never was a completed transaction under all of the terms of the deed of trust. They couldn't do it, they didn't do it. The contract was never consummated." The position of the State Roads Commission is untenable.

It seems from this clause and from some other items in the record that the parties anticipated that the Commission would permit access between the enlarged shopping center (which appears to have been contemplated) and the new Route 4. This expectation or hope was not realized and Purity Farms after making payments or incurring expenses of $57,000 concluded that the property was worthless to it, defaulted under the note and deed of trust and transferred the property to the appellant by deed in lieu of foreclosure.

The quoted provision simply permitted the release of land from the lien of the deed of trust if the hoped for agreement with the Commission could be made. It did not make the contract conditional as between Purity and the holders of the note, who were the beneficiaries under the deed of trust.

Sales of similar property or of the property condemned are, of course, admissible as evidence of the market value of the land at the time of taking. See *Bergeman v. State Roads Comm., 218 Md. 137, 146 A. 2d 48; State Roads Commission v. Wood, 207 Md. 369, 114 A. 2d 636; Pumphrey v. State Roads Comm., 175 Md. 498, 2 A. 2d 668.*[1] As in other civil cases, the instructions to the jury in a condemnation case must conform to the issues and the evidence. *Veirs v. State Roads Commission, 217 Md. 545, 554, 143 A. 613; Marchant v. Mayor & C. C. of Baltimore, 146 Md. 513, 126 A. 884.* We think that the question from the jury clearly reflected their view that the D'Arago-Parkell, Inc.-Purity Farms transaction involved only a conditional obligation on the part of the vendee to purchase the 49.15 acre tract which could be avoided if certain conditions were not met (and they were not), rather than a fixed obligation to purchase and pay the full agreed price for the land, regardless of the happening of any conditions, with merely a provision for the release of some eight acres from the lien of the deed of trust if certain specified conditions were met. Such a view was clearly erroneous and should have been corrected by the trial court. It appears that it could and probably did have a material effect upon the jury's assessment of damages and, accordingly, was prejudicial error.

Because of this error the judgment must be reversed and the case remanded.

> *Judgment reversed and case remanded for a new trial; costs to be paid by the appellee.*

1. No question is presented, nor does the evidence make it clear, whether or not any of the prices in the D'Arago-Parkell, Inc., Giant Food Properties, Inc., or Purity Farms transactions were influenced by the public project for which the land in question was taken. Cf. *Bonaparte v. Mayor & C. C. of Baltimore, 131 Md. 80, 82-83, 101 A. 594;* and *Congressional School of Aeronautics, Inc. v. State Roads Comm., 218 Md. 236, 249-50, 146 A. 2d 558,* and cases there cited.