## STATE ROADS COMMISSION OF MARYLAND *v.* WARRINER ET VIR.

[No. 10, October Term, 1956.]

*Decided January 3, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*J. Howard Holzer* and *W. Albert Menchine, Special Attorneys for the State Roads Commission,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for the appellant.

*W. Lee Harrison,* with whom were *Smith & Harrison* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The principal question in this case is whether or not a possible, future zoning reclassification of a piece of property

might properly be submitted for the consideration of the jury in determining the fair market value of the land at the time of its being taken for public use under eminent domain proceedings.

The State Roads Commission (the "Commission") instituted such proceedings against the appellee, Mildred C. Wolsh, now Mildred C. Warriner, on April 26, 1954. On that day it paid into the Circuit Court for Baltimore County the sum of $17,139.80 as its estimate of the "fair value of the land and improvements taken and damages done to the * * * property" sought to be condemned, and it took possession of the property. April 26, 1954, is, accordingly, the date of the taking. *La Fontaine's Heirs v. La Fontaine's Heirs,* 205 Md. 311, 107 A. 2d 653. The trial resulted in a judgment for the defendants, Mrs. Warriner and her present husband, entered upon an inquisition, awarding them damages of $49,825. The Commission appeals from that judgment.

At the time of the taking the property in question (referred to in the testimony and below as the "Wolsh tract") was zoned for residential use. Testimony was offered on behalf of the appellees to show that as of that time the property should have been reclassified, and a prospect that it would have been reclassified, for light industrial use within a reasonable time after April 26, 1954, if it had not been taken by eminent domain. The appellees also offered testimony with regard to the value of the property if it were so reclassified.

The Commission concedes that it "is not contended that there can be no case where consideration of changed zoning classifications can be given in arriving at the fair market value." The question has not previously been passed upon by this Court, but the rule is recognized both by text writers and by numerous cases in other jurisdictions that evidence of a reasonable probability of a change in zoning classification within a reasonable time may properly be admitted and its influence upon market value at the time of the taking may be taken into account. See *Nichols, Eminent Domain,* 3rd Ed., Vol. IV, Sec. 12.322 (p. 141); *Orgel, Valuation under Eminent Domain,* 2nd Ed., Vol. 1, Sec. 34 (p. 167); *City of Beverly Hills v. Anger,* 110 Cal. App. 626, 294 P. 476, a state-

ment from which is quoted with approval by the Supreme Court of California in *Long Beach City High School Dist. v. Stewart,* 30 Cal. 2d 763, 185 P. 2d 585, at 590; *State v. Williams,* Sup. Ct. of Mo., 289 S. W. 2d 64; *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S. W. 2d 808; *Portland & S. Ry. v. Ladd,* 47 Wash. 88, 91 P. 573; *Re Gibson and City of Toronto,* 28 Ont. L. Rep. 20, 11 D. L. R. 529; *Cunard v. Rex,* 43 Can. Sup. Ct. 88. We think that the rule above stated is correct.

The general measure of damages in condemnation cases is the fair market value of the land at the time of the taking. As was said in *Pumphrey v. State Roads Commission,* 175 Md. 498, at 506, 2 A. 2d 668: "In determining the fair market value of the land, consideration may be given to any utility to which it is adapted and for which it is immediately available. Market value is defined as the price which an owner willing but not obliged to sell would accept for the property and which a buyer willing but not obliged to buy would pay therefor." See also *State Roads Commission v. Wood,* 207 Md. 369, 114 A. 2d 636.

In *Bonaparte v. City of Baltimore,* 131 Md. 80, 101 A. 594, the property taken under eminent domain was a dwelling which had been used up to the time of the taking only as a single residence. It was, however, so constructed as to be adapted to use as an apartment house. It was held that the owner was entitled to have such use of the property, which would have been more profitable than renting the entire building as a unit, considered by the jury in determining the amount of damages. Judge Urner, writing the opinion of the Court, said (131 Md. at p. 83) : "The measure of the compensation to which the appellant is entitled in this proceeding is the actual market value of the property condemned. Its market value depends upon the uses for which it is available, and any special utility which may tend to enhance its value in the market is a proper element to be considered. The availability of the property for a particular use, contributing to its market value, is not to be ignored merely because it has not in fact been applied to that use. The valuation for condemnation purposes must disregard the effect of the public project, for which the

property is acquired, but must take into consideration all the uses to which it is capable of being applied at the time of the appropriation and which affect its marketability. *Consolidated G. E. L. & P. Co. v. Baltimore,* 130 Md. 20; *Baltimore v. Carroll,* 128 Md. 73; *Brack v. Baltimore,* 125 Md. 378; 128 Md. 437; *Baltimore v. Garrett,* 120 Md. 613; *Callaway v. Hubner,* 99 Md. 529; *Baltimore v. Smith,* 80 Md. 458; *Patterson v. Baltimore,* 130 Md. 645."

In *Reindollar v. Kaiser,* 195 Md. 314, 73 A. 2d 493, the fact that zoning regulations had not yet gone into effect in Howard County, where the land was located, at the time of the taking of the property, was shown by the testimony. It was held proper for the trial judge to say in his charge to the jury: *"You may take into consideration the fact* that the Howard County Zoning Laws had not become operative at the time the property was taken, so that at that time it could have been utilized or sold for any purpose the owner decided to utilize or sell it." Judge Collins, speaking for the Court, said (195 Md. at 322) : "At the time of the taking the owners could have used it for any purposes and this of course affected its value then and made it more valuable." It seems at least a fair inference that the fact that zoning restrictions were imminent must also have had some effect in determining the value of the property. Conversely, in the instant case the fact that the property was restricted at the time of the taking to residential use was very clearly before the jury. We see no reason why testimony to show a substantial possibility or probability of a reclassification should not also have been adduced in evidence. If the evidence offered proved to be insufficient to establish a reasonable probability of rezoning within a reasonable time after the date of taking, it would, we think, have been entirely in order for the trial court to have instructed the jury as to the insufficiency of such evidence and to have stated that no element or enhancement of market value could be based upon the mere possibility that at some time in the future a reclassification might occur. *Patterson v. City of Baltimore,* 127 Md. 233, 96 A. 458; *Brack v. City of Baltimore,* 128 Md. 430, 97 A. 548. Such, however, was not the situation here. Without reviewing the testimony in detail,

we think that the showing as to the growth in population of the Towson area, the marked expansion of its commercial area outwards along the York Road towards the Wolsh tract and the demand for property for industrial use in the Towson area, the proximity of a tract already zoned as light industrial, the adaptability of the tract to such use, two widenings of the York Road and the opening of a part of the Baltimore-Harrisburg Expressway in the vicinity, and the opinions of expert witnesses that the highest and best use of the Wolsh tract was for light industrial use, were sufficient to meet the test of at least a reasonable probability of reclassification within a reasonable time.

The appellant seeks to discredit all such testimony by insisting upon the improbability of rezoning. This asserted improbability is rested primarily upon the fact that most of the property around the Wolsh tract was still zoned as residential in April, 1954, and upon the fact that applications made in 1945 and in 1949 for reclassification of the Wolsh tract as commercial had been denied, and a later application for such reclassification also made in 1949 had been withdrawn without prejudice. Much of the force of the denial of these applications is lost because a principal reason for their denial appears to have been the existence, at the time when these applications were acted upon, of ample land in the neighborhood —to the south of West Road—already zoned as commercial. There is a good deal of force to the Commission's objections, but we do not think that the evidence as to the possible rezoning was so insubstantial as to require the trial court to instruct the jury to disregard it. Its weight was for the jury. It is interesting to note that in 1949 one of the considerations which led the Planning Director to recommend against the rezoning then sought was this: "If the owner has no specific development project in mind but is merely seeking rezoning in order to increase the possible sales value of his frontage, perhaps with the knowledge that this is the point proposed for the Expressway to cross, then reclassification would simply have the effect of increasing the cost of land acquisition for the Metropolitan District and the State Roads Commission."

When we compare the amount returned upon the inquisi-

tion, $49,825, with the amounts of the appraisals of the appellees' expert witnesses, $75,000 and $75,600, respectively, it seems quite evident that the jury did not fully accept either these appraisers' views as to market value or their complete optimism as to the prospects of rezoning, or both. See *State Roads Commission v. Wood, supra,* where a somewhat comparable situation developed with regard to expert testimony as to the value of land available for development as lots, but not actually so developed, prior to the time of the taking.

Here, as in the *Wood Case,* the appellees seek to uphold the verdict on the basis of appraisals of the property for sale at retail for residential use, less the development costs of making it available for such sales. These appraisals were elicited in part by direct examination of one of the appellant's witnesses and in part by cross-examination of one of the appellees' witnesses, and by deducting from the gross amount of such appraisals a sum stated to be equal to the estimated cost of putting in a street and installing utilities. There is, however, little evidence in the record to support the cost of the utilities and none to support the cost of paving. Even though the appellees' brief informs us that this basis of valuation was argued to the jury, we cannot assume that this was the sole basis for the jury's finding, and that value attributable to rezoning prospects did not enter into the jury's calculations.

Although the Commission concedes that there are cases in which consideration can be given to the possibility or probability of a change in zoning restrictions if the prospect of such a change is sufficiently likely to have an effect on market value, five of the twelve exceptions to the instructions of the trial court which it presses in its brief in this Court appear to proceed upon a directly opposite theory. These exceptions are the second, third, fourth, sixth and seventh. The theory upon which they rest is perhaps most bluntly and explicitly stated in the third exception, which is in substance that the trial court erred "in failing to instruct the jury that in evaluating the damages sustained by the Defendant * * * the jury should not consider any use of the subject property not permitted by the Zoning and/or Planning authorities of Baltimore County on April 26, 1954, as the evidence in this case indicates

that neither the Zoning nor Planning authorities of Baltimore County on April 26, 1954, permitted the use of the subject property for a commercial or industrial use, but rather to [*sic,* for?] the use of 'A' Residential." An instruction such as that sought by the Commission would appear to deny any effect whatever to the possibility or probability of a zoning change and to make the regulations in force at the moment of the taking absolutely controlling.

An almost exactly similar contention seems to have been made in *State v. Williams, supra,* and was thus stated and answered by the Supreme Court of Missouri: "As indicated, plaintiff contends that if the property was zoned as residential on the day of the taking, the defendants are absolutely prohibited from showing the value of the land for commercial purposes. It is argued that any variance from that rule would permit a recovery for damages based upon remote, speculative and conjectural possibilities. We cannot agree with the contention of plaintiff in this regard. It may be conceded that ordinarily only uses for which the land is adapted and available may be considered. However, an exception to this general rule is recognized in cases where the land is not available for a certain use because of a zoning ordinance, if the evidence indicates a reasonable probability of a change in the zoning ordinance in the reasonably near future. [Citing *Orgel on Valuation under Eminent Domain,* 2nd Ed., Sec. 34, p. 167.]" (289 S. W. 2d at p. 66.)

It was also aptly said by the Supreme Court of Texas in *City of Austin v. Cannizzo, supra*: "We are unwilling to lay down a hard and fast rule that in arriving at market value consideration may never be given to a use for which property is reasonably suitable and adaptable but which use is presently prohibited by a zoning ordinance. It is a matter of common knowledge that cities frequently lift zoning ordinances or reclassify property in particular zones when the business or wants of the community justifies that type of action in the interest of the general public welfare." (267 S. W. 2d at p. 815.)

The appellant objects to the testimony of the appellees' appraisers not only on the ground that it is based upon a

zoning classification not in effect at the time of the taking, but also upon the ground that they refused, or in any event did not, value the property as residential land. If it be assumed their refusal to consider the possibility that rezoning to a light industrial zone would not have been granted would seriously impair one's confidence in their estimate of fair market value as of April 26, 1954, this would go only to the weight, not to the admissibility of their testimony. As above observed, the jury did not accept it by any means in full.

The appellant also attacks their testimony on the ground that valuation in terms of money for a particular use is never admissible. We think such an objection is wholly inappropriate to the wide diversity of uses which the record shows to be permissible under the light industrial classification contained in the Baltimore County zoning regulations in force in April, 1954. Evidence as to money value for a far more specific use, namely, the most profitable use for which it could be employed (there as an apartment house), was held properly to be considered in *Bonaparte v. City of Baltimore, supra.*

The Commission makes several attacks upon the testimony of Mr. Wilsie H. Adams, the Zoning Commissioner of Baltimore County, who testified for the appellees as an expert on zoning. Whether his appearance in such a role was or was not in the best of taste is not an issue, nor is any claim made that he was legally disqualified because of his position. We think that he made it reasonably clear that he was testifying as above stated and that he was not testifying as to what his official decision as Zoning Commissioner would have been. Indeed, it was his effort while under cross-examination to make it clear that he was not testifying that he, as Zoning Commissioner, would have granted a reclassification of the property to light industrial use which serves as the basis for the appellant's claim that he admitted that "the possibility of reclassification was conjecture." Examination of the passage in the record upon which this assertion is based shows, we think, that he was merely saying that what his action as Zoning Commissioner would be on a petition for reclassification could not be stated unless and until he had such a petition be-

fore him and had held a public hearing thereon. Though the question put to him following his statement to this effect is not itself wholly clear, Mr. Adams' meaning seems plain to us, that it would be speculation to say what his official decision would be in advance of his having a petition before him and having a public hearing on it. Indeed, the actual question put to him spoke of "speculation as to what your decision would be in a case that was not fully presented." His concession that this would be speculation seems no more than a concession of the obvious.

We have already referred to five of the appellant's twelve exceptions to the trial court's instructions which are urged in its brief in this Court. We shall now turn to the others.

The first relates to the alleged refusal of the trial court to instruct the jury in substance (a) that the residential classification existing on the date of the taking was presumed to be proper, (b) that the burden rested upon the property owners to establish the contrary either by showing that the original zoning was erroneous or that there had been such a genuine change in conditions as to justify rezoning, and (c) that the evidence failed to meet either of these requirements. The court did not specifically state the presumption of correctness of the existing zoning classification, but by outlining fully the procedure required to be followed in seeking reclassification and in stating the requirements of proof substantially as set forth in (b) of this exception, we think that the trial court covered (a) and (b) adequately. At this point we may note that the thirteenth exception to the charge seems quite inconsistent with (b) of the first, since it attacks the charge for giving substantially the same instruction as that sought by the latter part of the first exception. We think that the court properly instructed the jury as to the burden resting upon the proponent of reclassification to show either a mistake in the original zoning or a genuine change in conditions of such a character as to justify reclassification. *Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27; *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 105 A. 2d 219.

This brings us to part (c) of the first exception which is in effect a prayer for a directed verdict as to the improbability

of reclassification. This has been covered by what we have already said. We think that the court fairly and properly left it to the jury to determine whether or not there was a reasonable probability of a rezoning as of the time of the taking. This observation will also cover the twelfth and fourteenth exceptions. The twelfth was to the failure to instruct the jury that there could be no certainty as to whether or not reclassification might be denied. Certainty was not required to be shown. The fourteenth is essentially a duplication of part (c) of the first exception and also of the seventh.

Running through many of the exceptions is the contention that the court allowed the jury to speculate upon the question of reclassification and upon the amount of damages based thereon. This contention may be answered briefly by reiterating the view that there was sufficient evidence to warrant the submission of the question of the probability of reclassification to the jury.

The fifth exception asserts that the court failed to instruct the jury that it should not consider any increase in the value or use of the appellees' land after the date of taking and that the jury was improperly allowed to consider a plat indicating such changes in the use of the appellees' land after that date. The court did specifically instruct the jury that it was to base its findings solely on the fair market value of the property at the time of taking. The objection to the plat is not amplified. At an earlier stage of the proceedings the court instructed the jury to disregard a change of zoning shown by a map which occurred after the date of taking. The jury was certainly aware of the fact of the Beltway's being planned and constructed and it viewed the property involved in the suit. There is some question as to whether an objection to the introduction of the new zoning map which was being worked on at the time of the taking, but was not completed and approved until afterwards, was sufficiently made. Assuming that it was, and assuming that the plat should not have been admitted (a question which we do not decide), there does not appear to have been any prejudice resulting from the admission of the plat. There does not appear to have been any objection at the time of the introduction of an earlier plat.

The eleventh exception is to this passage in the court's charge: "* * * and having heard the testimony of the Zoning Commissioner of Baltimore County, who testified as an expert for the property owners." This is a correct statement of fact. The complaint is that reference to the official position of the witness gave undue weight to his testimony and ignored what is asserted to be the fact that he "declined to state the role that he occupied as a witness in this case." We find the record does not support this assertion. We think that the appellant's criticism to the effect that this statement does not sufficiently distinguish between Mr. Adams' roles as Zoning Commissioner and as an expert witness is not well taken. He was not legally disqualified as a witness because of his official position.

The fifteenth and last exception seems attenuated. It is that the trial judge did not charge the jury that it should not draw any inference from anything said by him on the question of whether or not a zoning reclassification, if applied for, would or would not have been granted. A general instruction along similar lines referring to value and damages was given. We find no force in this exception.

In accordance with the foregoing views the judgment will be affirmed.

*Judgment affirmed, with costs.*