LAURA PATTERSON and SIDNEY T. DYER

*vs.*

THE MAYOR AND CITY COUNCIL OF BALTIMORE

ET AL.

*Condemnation of streets in Baltimore City : eminent domain;
assessment of benefits; grade must first be fixed—; witnesses;
Street Commissioners, etc; inspections of land by
jury.    Damages : injury to balance of prop-
erty.    Evidence : other proceedings.
Experts : not allowed to qualify;
questions not reviewable
on appeal.*

In condemnation proceedings for the opening of streets, Balti-
more City exercises, through the Street Commissioners, the
power of eminent domain.                              p. 158

In condemnation proceedings for the opening of streets, Bal-
timore City can not lawfully assess benefits against abutting
property, until the grade of the proposed street has been first
established.                                          p. 156

And when an assessment for benefits for the opening of a
street has been made before the fixing of the grade, on appeal
to the Baltimore City Court, a prayer instructing the jury that
there is no evidence in the case legally sufficient to justify an
assessment for benefits against the property, is proper.    p. 157

On appeal to the Baltimore City Court from the benefits
assessed in condemnation proceedings for the opening of streets,
the Street Commissioners, their clerks, and other agents are
competent witnesses under section 179, Chapter 32 of the Acts
of 1912, and may be summoned and examined as to the prin-
ciples upon which their awards and assessments were made.

                                                     p. 157

On appeal from the action of the Street Commissioners in
awarding damages and assessing benefits, in condemnation pro-
ceedings, the courts should be careful to see that the rights of
the property owners are fully protected.             p. 159

In estimating the damages to be paid for condemnation of property, the jury must include in their award of damages, not merely the market value of the land actually to be taken, but also a due allowance of damages for injury to the remaining land.                                    pp. 160-161

On appeal from condemnation proceedings for the opening of streets under one ordinance, the proceedings undertaken for the opening of another street, under a distinct and separate ordinance, are not admissible.                                    p. 158

Where a witness was not allowed by the trial court to qualify as an expert, the Court of Appeals can not review the ruling of the lower Court upon other questions which might have been properly asked had the witness been allowed to qualify.    p. 159

Where the jury in condemnation cases are sent to inspect the land, under section 179, Chapter 32 of the Acts of 1912, they are not confined to the duties and limitations which the principle of common law imposes upon a common law jury.

p. 161

*Decided June 25th, 1914.*

Appeal from the Baltimore City Court.    (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Arthur W. Machen, Jr.,* for the appellants.

*Robert F. Leach, Jr., Assistant City Solicitor,* (with a brief by *S. S. Field, City Solicitor,*), for the appellees.

BURKE, J., delivered the opinion of the Court.

City Ordinance No. 109, approved May 27th, 1912, authorized the opening of Adams street from the west side of Homewood avenue to the south side of Twenty-fifth street.

It provided for the opening of the street "to the south side of Twenty-fifth street 100 feet wide as now in process of widening." The opening of Twenty-fifth street had been authorized by an Ordinance No. 416, approved December 9th, 1909.

The appellants are the owners in fee of a tract of land, which extends northerly and easterly from Walbert avenue. For a clear understanding of the situation of the several streets and the location of the appellants' property with reference thereto, a diagram is here inserted.

The portion of the appellants' land actually taken for the bed of the street is designated upon the diagram as Lot Z-2, and the adjoining lots as Lots 41 and 102. By the return of the Commissioners for Opening Streets the appellants were awarded $1,174.50 for the lot actually taken, and were assessed $1,168.00 as benefits,—$6.50 less than the damage. Lot 41 was assessed $724 for benefits and Lot 102, $444. A petition for a review of the award and assessment was filed in the Baltimore City Court, where a trial was had upon the questions involved. The trial resulted in an inquisition which fixed the damages at $1,174.50 and the benefits at the same figure. This appeal was taken by the appellants from the rulings of the lower Court made during the progress of the trial. The main questions in the case are:

*First.* The effect of the failure of the City to establish the grade of Adams street before making the award and assessment.

*Second.* The competency of the present and prior Commissioners for Opening Streets as witnesses.

*Third.* The admissibility in this case of the Ordinance and proceedings for the opening of Twenty-fifth street.

There are some subsidiary questions presented upon the rulings upon the evidence and prayers which will be considered later.

As to the first question. The grade of Adams street has never been established. It was decided in the recent case of the *Mayor and City Council* v. *Johnson,* 123 Md. 320, that the City cannot lawfully assess benefits against abutting property until the grade of the proposed street shall have first been established.

In that case JUDGE PATTISON, speaking for the Court, said: "When a public street or highway is opened and land is to be condemned for the bed of the street or highway, it is but fair and equitable that the grade of such street or highway should first be established, in order that those who are to determine the benefits, if any, that the opening of such street or highway will be the abutting lands, may estimate

the necessary costs of placing such abutting lands in a condition to receive the advantages of the street or highway as opened and graded; and the grade so established should be one, so far as it can then be determined after a proper consideration of the rights and interests of the adjoining land owners, that for all time will best subserve the ublic interest and convenience. Not to establish a grade at the time when a street is open, but at such time to assess the benefits without regard to the costs and expenses to which the adjacent land owners may be subjected in cutting or filling their lands so as to enable them to receive the advantages of the road so opened, would, we think, be unfair and inequitable to them. The grade of the street is so materially involved in ascertaining the amount of benefit to be assessed against the abutting land, that it is right and proper, in our opinion, that a permanent grade, and not a tentative one, such as here referred to by the City Engineer, should be established before the City should be permitted to assess benefits to abutting lands, caused by the opening of such street or highway."

Under the authority of that case there was reversible error in refusing the appellants' sixth prayer which asserted that there was no evidence legally sufficient to justify an assessment of benefits against Lot No. 41, and in refusing their seventh prayer which, for the same reason, declared that there could be no assessment for benefits against Lot 102. The eighth prayer for the same reason should have been granted.

Under section 179 of the Acts of 1912, Chapter 32, the Commissioners for Opening Streets were competent witnesses in the case. That section provided that upon the appeal from the award and assessment, the Court "may require the said Commissioners, their clerk, surveyor or other agents and servants, or any of them, and all such other persons as the Court may deem necessary, to attend, *and examine them on oath or affirmation, etc."*

The City in condemning and opening Adams street was exercising through the Commissioners for Opening Streets the power of eminent domain, and in *Consolidated Gas Company* v. *Baltimore City,* 105 Md. 43, the Court said that, "Ever since the case of *Tidewater Canal Company* v. *Archer,* 9 G. & J. 492, the practice in Maryland has allowed the jurors, who sign the inquisition as witnesses on return of such inquisition for confirmation, upon all subjects whatever relating to the controversy, may be examined as witnesses, as fully as any other persons who might be sworn as witnesses in the cause, that they may be examined as to the grounds and motives, for their finding, in order to ascertain whether in coming to their conclusions they had not mistaken facts as well as law." This proceeding is analagous to the old proceeding by condemnation, and it is proper that the persons who made the award and assessment should be required to state the principle upon which they acted.

We are of opinion that the questions of the opening of Twenty-fifth street and their effect upon the appellants' property should not be injected into this case. That was a separate and independent proceeding, and it may never be carried to completion. If it should be, all grievances which the land owners may have against the action of the Commissioners may be remedied by an appeal to the Court. Such questions are not properly open for determination in this case.

The record presents twenty bills of exceptions taken to the rulings of the Court on evidence. It results from the views we have expressed that there was no error in the ruling embraced in the first, second and third exceptions, which relate to the refusal of the Court to admit in evidence the ordinance for the opening of Twenty-fifth street; the record of proceedings in the opening of that street; and testimony as to the establishment of the grade of that street.

There was error in the rulings on thee fourth and fifth exceptions. The question asked Mr. Grannan, one of the Commissioners for Opening Streets, to show upon what his award

of damages was based, and his judgment of the value of Lot Z-2 should have been answered. The question set out in the sixth exception has reference to the opening of Twenty-fifth street, and we find no error in that ruling. Mr. Budnitz should have been allowed to answer the question embraced in the seventh and eighth exceptions, and the questions propounded to John L. Sanford in the ninth and tenth exceptions were likewise proper, and he should have been permitted to answer them. They were designed to establish the qualification of Mr. Sanford to testify to the value of the property. Had the answers to these questions established his qualification to speak as to values, he should have been permitted to answer the questions embraced in the eleventh exception. But as we do not know whether or not he was qualified we cannot pronounce that ruling erroneous. The same observation, for the same reason, applies to the twelfth exception.

The evidence proposed to be offered in the thirteenth exception was whether certain proceedings which had been taken for the opening of Twenty-fifth street would affect the saleable value of Lot Z-2. The Court refused to admit this evidence, and for the reason above stated, there was no error in the ruling. The question propounded in the seventeenth exception related to the pending proceeding for the opening of Twenty-fifth street, and the ruling was correct. Inasmuch as the City could not make an award and assessment of benefits until the grade of Adams street had first been established, the evidence proposed to be introduced in the nineteenth and twentieth exceptions to show the effect on the value of the lots by reason of the failure of the City to establish the grade was wholly immaterial. The evidence proposed to be offered in the fourteenth, fifteenth, sixteenth and eighteenth exceptions had a tendency to enlighten the jury upon the question of damage. The Court should be careful to see that the rights of the property owners are fully protected, and we do not think there are any well-founded objections to these questions.

There remains for consideration the rulings of the Court on the prayers. The sixth, seventh and eighth prayers we have already passed upon. The appellants submitted fifteen prayers. Their first and second were granted as offered. Their third, fourth, fifth, twelfth and fourteenth were refused as offered but were granted with modifications made by the Court. Their other prayers were refused. The appellants excepted to the refusal of their prayers as offered and to the modifications made by the Court. Their third and twelfth prayers were upon the subject of *damages,* and are here transcribed:

"*Third.*—In estimating the damages to be paid for condemnation of property, the jury must include in their award of damages not merely the market value of the land actually to be taken, but also a due allowance of damages for injury to the remaining land owned by the appellants, Laura Patterson and Sidney T. Dyer, if the jury shall find that any such injury will be caused."

"*Twelfth.*—If the jury find that Laura Patterson and Sidney T. Dyer are the owners of the ground binding on the southernmost side of Twenty-fifth street as proposed to be opened in the proceedings now pending for that purpose, and bounded northwardly by Twenty-fifth street and southwardly by Walbert avenue and the dividing line between the land known as the Patterson Cold Stream property, and the land known as the Walbert property, and if the jury further find that the opening of Adams street as proposed in this proceeding will be injurious to the petitioners, Laura Patterson and Sidney T. Dyer, in an amount greater that the present market value of the ground contained in Lot No. Z-2 shown on the plat marked A and B in evidence, then the jury in ascertaining the damages to be paid to said petitioners, are not confined to the market value of the ground contained in said Lot No. Z-2, but they may and should award to the said petitioners as damages such sum of money as will fully compensate for all the injury which the jury shall so find will so be done to them by the opening of said Adams street as proposed in the present proceedings."

These prayers as offered should have been granted, as they stated the correct rule of damage.

Under the power contained in section 179 of the Acts of 1912, Chapter 32, the Court sent the jury of inquest to view the land condemned.   There is a broad distinction between the nature and effect of a view of the premises by a jury in a condemnation case and that of an ordinary action at law. In the first class of cases the jury is not confined to the duties and limitations which the principles of the common law impose upon a common law jury.   This subject has been fully treated in *Tidewater Canal Company* v. *Archer, supra.* While we are not to be understood as holding that all the principles announced in that case upon the subject we are now considering are applicable to this case, we do hold that the jury may be very properly influenced as to the value of the property and the damage that would be done by the opening of the proposed street by their view of the property.

In *Kurrle* v. *Baltimore City,* 113 Md. 63, the Court said: "In eminent domain proceedings the jury goes upon the land for the purpose of *ascertaining its value,* and their view should have more effect than in ordinary cases where they are generally and primarily permitted to go to the *locus in quo* so as to better understand and apply the evidence."

The effect of the modifications made by the Court to the appellants' third and twelfth prayers was to confine the jury to the evidence produced at the trial, and to shut out from their consideration the effect which the view of the property may have had upon their minds.   In this the Court fell into an error.   The appellants have abandoned their exception to the refusal of their fourteenth prayer and to the modification thereto made by the Court, and they do not insist upon their fifteenth prayer.

Their fourth, fifth and thirteenth prayers relate to *benefits.* As the question of benefits could not be determined under the circumstances of this case, there was no error in refusing these prayers, and they should not have been granted as

modified.   The tenth and eleventh prayers have reference to the opening of Twenty-fifth street and for the reasons already stated were properly rejected.

The record contains three prayers offered by the appellee. The first was modified by the Court and granted as modified. It related to the question of *benefits*.   There was a special exception to this prayer which was overruled by the Court. The exception was based upon the ground that there was no legally sufficient evidence to show that the property would be benefited.   It results from what we have heretofore said that the exceptions should have been sustained and the prayer refused.   We find no error in granting the second and third prayers of the appellee.   What we have said disposes of all the questions presented, and for the errors pointed out in the rulings of the lower Court, the case must be remanded for a new trial.

*Rulings reversed and new trial awarded;*
*the appellee to pay the costs.*