MAYOR AND CITY COUNCIL OF BALTIMORE et al.
*v.* STATE ROADS COMMISSION

[No. 303, September Term, 1962.]

*Decided June 27, 1963.*

The cause was argued before BRUNE, C. J., HENDERSON, HAMMOND, HORNEY, and SYBERT, JJ.

*Philander B. Briscoe,* with whom were *Francis B. Burch, City Solicitor, Lloyd G. McAllister, Chief Assistant Solicitor* and *Robert C. Harrison, Assistant City Solicitor* on the brief, for appellants.

*Leroy W. Preston, Special Attorney,* with whom were *Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by property owners dissatisfied with the amount of damages awarded them in a condemnation case involving land taken by the State Roads Commission (the Commission) for the approach road to the Baltimore Harbor Tunnel. The owners, who have composed their differences over their respective claims of title to the property or properties involved and make common cause against the Commission, are the City of Baltimore and Howard D. Bennett. The questions presented relate to numerous rulings on questions of evidence, comments by the trial court on the extension of a proposed

street, and instructions relating to the measure of damages. The case was tried before a jury, which viewed the premises, and awarded damages of $18,444.00 for the slightly less than ten acres taken by the Commission, and judgment was entered in accordance with this award.

The land in question is made up of six tracts, each of which was the subject of a separate condemnation suit. All of these cases were consolidated for trial. The land lies east of the Patapsco River, west of Potee Street and south of a railroad embankment which carries the Curtis Bay branch of the Baltimore & Ohio Railroad in that part of the City known as Brooklyn. For the most part the land now comprised in the tract was originally formed by the deposit of sediment brought down by the river. A good deal of it was at first an island, known as Billikin Island, but largely as a result of dumping operations by the time of the taking no part of it constituted an island any longer.

The appellants set up sixteen separately numbered paragraphs in their brief asserting in each one or more allegedly erroneous rulings relating to evidence. The appellants set them up simply in the order in which they occurred during the trial. We find that most of them are capable of being treated in groups, and in the interests of clarity and (we hope) brevity we shall so treat them. One factor which runs through the case is the length of time which elapsed between the filing of the suits and the trial thereof. The delay was due, we understand, largely to confusion as to title among different claimants to the tracts involved. The suits were filed in 1955, the date of taking was January 1, 1956, and the cases were tried (for three days) in March, 1962. Meanwhile, the Harbor Tunnel approach road had been built, and construction by the City of an extension of Patapsco Avenue had been commenced. These facts were, of course, visible to the jury on viewing the premises.

The appellants' first objection to evidence (numbered I) was to the admission of an aerial photograph of the area taken in 1949. The claim that it was too remote in time because of changes in land due to accretion, new streets, and heavy filling of earth, was virtually abandoned at the argument. The admis-

sion of the photograph was within the discretion of the trial court (*Hance v. State Roads Comm.,* 221 Md. 164, 172-73, 156 A. 2d 644), and we find no abuse of discretion.

The second objection (II) is to the court's curtailing of the cross-examination of one of the Commission's witnesses with regard to the location of swampy areas on the appellants' land as shown by other aerial photographs, which the court thought "meaningless" as to the location of swamps. The same witness did identify the location of swampy areas on a part of the property. If there were any error in this matter, it was harmless and not a ground for reversal. *Hance v. State Roads Comm., supra,* 221 Md. at 176.

One group of objections (Nos. III, V, VI, and XV) pertain to evidence relating in one way or another to the character of the soil of the property taken. Profiles were admitted showing the nature of the land—satisfactory or firm subsoil, which could serve as a foundation for either an expressway or a substantial industrial building, unsuitable overlay (marshy material), and fill which had been dumped in, including garbage and junked automobiles. We think that these profiles were sufficiently authenticated as being based upon and prepared from data compiled under the supervision of the expert witness through whom they were offered. Evidence as to the cost of putting the land in proper shape for use for industrial purposes—the highest use for which the appellants claimed it was suited—was obviously relevant to its value for such purposes. The Commission contended that, without incurring great expense, the highest and best use for the property was as a dump, or for outdoor storage of automobiles. Because of the character of the soil, the Commission found it necessary to incur heavy expense to make this property usable to carry the new highway. Where the new road was to cross the proposed extension of Patapsco Avenue (discussed below) the Commission used piles. It dredged out material which was unsuitable to support the new highway all across the appellants' land, back-filled the land with suitable material and (temporarily) used surcharge material to weigh down and compact the newly placed material rapidly.

Evidence relating to the cost of making the appellants' land

usable for industrial purposes included testimony to the effect that piles would be needed to support industrial buildings of various types and testimony with regard to the cost of piling. The appellants object that the trial court cut them off from cross-examining a witness for the Commission as to the length of piles that would be necessary. His figures with regard to costs were based upon the use of forty-foot piles. His testimony showed the average depth of unsatisfactory soil to be about twenty-eight to thirty feet. It is not disputed that piles, to be effective, would have to penetrate below such covering and get into satisfactory subsoil. We think that the trial court did cut the appellants off somewhat short from a proper line of inquiry, but the appellants put in testimony of their own designed to show that piling thirty feet in length would have been adequate and would have cost considerably less than forty-foot piling. The appellants conceded that thirty-foot piling would have been necessary. The jury had both sides of the picture before it. Again we find no such prejudicial error as would call for a reversal on this score. *Hance v. State Roads Comm.,* *supra.*

The fact that the witness who testified as to soil conditions regularly referred to the fill as "garbage" and did not refer to other material used as fill, was brought out clearly on cross-examination; and any objection based thereon seems too insubstantial to call for extended comment. If such testimony amounted to an exaggeration, its effect was, we think, thoroughly dissipated by the cross-examination just referred to.

One objection (XV) made by the appellants to evidence relating to the unsatisfactory character of the soil to carry heavy weights seems to be that no special treatment was needed to make part of their land suitable for the extension of Patapsco Avenue and the heavy traffic to be expected thereon. If that be the fact, we find no evidence in the record extract to support it, nor do we find any statements to support a similar assertion in their brief with regard to the subsoil under Potee Street. Even if there may be such evidence somewhere in the record, it would be a matter affecting the weight, but not the admissibility of conflicting evidence, and it would be for the jury and not for us to pass on.

The appellants' principal group of objections relating to evidence (IV, VII, VIII, XI (at least to some extent), XII, XIV, and XVI) relate to the proposed extension of Patapsco Avenue through their property. Such an extension appears to have been still only under construction six years after the taking with which we are concerned. The first ordinance looking towards its extension was passed in 1925 and amendatory ordinances were passed in 1930 and 1935. Even the latter of these was adopted at least twenty years before the taking. There was also evidence showing that in 1952 the Commission on City Planning approved the proposed extension and showed it on a plat. The evidence also showed clearly that the Commission in 1954 in planning the Harbor Tunnel approach contemplated carrying the new road over the proposed extension of Patapsco Avenue. The trial court properly excluded as irrelevant the cost of the proposed overpass, but admitted evidence that the overpass was contemplated.

The Commission's appraisers did not allow any enhanced value for the subject property because of the likelihood of the extension of Patapsco Avenue. The appellants object to this and to the court's pointing out what was undoubtedly true, that up to January 1, 1956, no action had been taken and there had been no appropriation to carry the proposed extension into effect, and further that the City could change its mind. (See, for example, *Lord Calvert Theatre, Inc. v. Mayor & City Council of Baltimore,* 208 Md. 606, 119 A. 2d 415.) Mr. Magee, a witness for the Commission, pointed out the possibility of a change of mind or of long delay. He said that the possibility was a matter which could be considered, but he thought it too speculative to warrant placing any additional value on the property.

Mr. Philip Edward Klein, an appraiser employed by one or both of the appellants, testified that the Patapsco Avenue extension would go through the appellants' property for about 750 or 800 feet, giving frontage on each side. He further testified (over objection by the Commission) that in arriving at the value of $10,000 an acre for the appellants' land at the time of the taking, he included $2,500 an acre "for the present worth of future benefits of Patapsco Avenue." The court's instructions

pointed out a difference of opinion as to whether the prospect of the extension of Patapsco Avenue affected the market value of the property, and they permitted the jury to take the possible extension of that street into account and to make such allowance therefor as the jury might think proper. We think these instructions were fair and proper. (Cf. *State Roads Comm. v. Warriner,* 211 Md. 480, 128 A. 2d 248, holding evidence admissible of a reasonable prospect of a change in zoning classification within a reasonable time.) Also, we find no error in the court's comments during the trial and in the instructions to the effect that nothing had been done up to January 1, 1956, to carry into effect the ordinance of 1925 or the amendments thereto above referred to looking to the extension of Patapsco Avenue.

Objections X and XIII deal with evidence relating to properties involved in comparable sales. The first of these goes to the trial court's sustaining an objection to a question put to one of the Commission's appraisers as to whether he knew the cost of draining the property adjacent to the appellants' land. That property had been the subject of a comparable sale which the appraiser relied upon as very closely comparable, and that property sold for $1,300 an acre. The cost of drainage of the adjoining land was testified to by the appellants' appraiser, who claimed that the subject property was much more favorably situated as regarded drainage problems. If there were error in the trial court's ruling, we think it was not prejudicial and therefore would not require reversal. See *Hance v. State Roads Comm., supra.* The appellants' main difficulty seems to be that the jury did not accept their appraiser's valuation.

Objection XIII is based upon the exclusion of testimony relating to access to property which was the subject of a sale claimed by the appellants' appraiser to be comparable. That property was at some considerable distance from the subject property. We agree with the trial court that the relevance of the evidence sought is not apparent, and we find no error in its exclusion. The question was largely in the discretion of the trial court (Cf. *Bergeman v. State Roads Comm.,* 218 Md. 137, 146 A. 2d 48), and we see nothing to suggest an abuse of discretion in this ruling.

The basis of objection No. XI is obscure. We have already noted that in part it refers to the possible extension of Patapsco Avenue. It does so by criticizing Mr. Magee, one of the Commission's appraisers, for not having investigated "its progress." It also criticizes him for not having seen the soil profiles prior to the trial, and it criticizes him for allegedly occupying somewhat inconsistent positions. The first two criticisms may have some relevance to the weight of the testimony of this witness, but that is, of course, a matter primarily for the trier of facts. There is not even a contention that his testimony was inadmissible. We find no basis whatever for the third criticism. Mr. Magee represented the State Roads Commission and the State Roads Commission alone. It was part of his work to negotiate for properties required by the Commission and, of course, he had to appraise their values in order to advise the Commission.

The appellants' remaining contention on evidence (No. IX) pertains in part to the court's sustaining objections to questions which seem of little importance or relevance and in part to their claim of severance. As to the latter, they appear to have assented to the court's ruling, which confined discussion to one piece of property not taken. There is nothing for us to review on this matter.

The appellants are correct in their contention that in condemnation cases, the value of what is taken is ordinarily to be determined in a case of partial taking by the difference between the fair market value of the entire tract before the taking and the fair market value of what is left after the taking. See *Veirs v. State Roads Comm.,* 217 Md. 545, at 554-55, 143 A. 2d 613, and cases there cited, which include *Johnson v. Consolidated Gas, Electric Light & Power Co. of Baltimore,* 187 Md. 454, 50 A. 2d 918; *Realty Improvement Co. v. Consolidated Gas Electric Light & Power Company,* 156 Md. 581, 144 A. 710; and *Pumphrey v. State Roads Comm.,* 175 Md. 498, 2 A. 2d 668. See also: *Patterson v. Mayor & City Council of Baltimore,* 124 Md. 153, 160-61, 91 A. 966; *Baltimore v. Garrett,* 120 Md. 608, 87 A. 1057.

On the testimony presented in this case an instruction as to damages based exclusively on before and after taking values

would have been more likely to confuse than to aid the jury in making its inquisition. Four witnesses testified as to valuations and damages. (Due to a mistake which was not corrected until a very late stage of the proceedings all of them stated their figures on the basis that the amount of land taken was 10.376 acres. This was one-half acre too much, as the jury was ultimately informed.) One of these witnesses was Mr. Bennett, one of the owners. He said nothing at all about any damages to the tract of approximately 1.8 acres due to the taking of the other ten acres. He simply valued the land taken at $15,000 an acre and claimed damages accordingly. His figure was $155,640. Mr. Magee, an appraiser called by the Commission, valued only the land taken, most of it on an acreage basis and some on a square foot basis. His total valuation of the land taken was $16,262. He, too, said nothing about the 1.8 acres not taken. Mr. Smith, the other appraiser called by the Commission, valued most of the land taken on an acreage basis and a small part on a square foot basis. His total figure was $18,927 for the land taken. (The jury's inquisition, after allowing for the half acre which had been erroneously included in the witnesses' calculations, was almost exactly in accord with Mr. Smith's appraisal.) Mr. Smith made no allowance for damages to the 1.8 acres left because he was of the opinion that it suffered no diminution in value by reason of the taking of the other ten acres. The fourth witness as to valuation was Mr. Klein, called by the appellants. He used the before and after taking method of arriving at his net figure as to damages. He valued the entire tract before the taking at $110,760 and the 1.8 acres left after the taking at $5,900, arriving at a net figure of $104,860 as the amount of damages sustained.[1]

All of the above estimates of value were furnished to the jury by a supplemental memorandum of the court after the instructions had been delivered. This memorandum also reduced the acreage taken by one-half acre, making the amount taken

1. We are unable to reconcile Mr. Klein's appraisal of $10,000 an acre with his over all valuation before taking of $110,760. His testimony shows that he took the whole tract as 12.176 acres, of which 10.376 acres were taken and 1.8 acres were left.

9.876 acres.[2] A "before and after" instruction, though entirely proper as an abstract legal rule, would only have served to confuse the jury or who have required the making of offsetting calculations with regard to the figures given of three witnesses, who took no account of damage to the remaining 1.8 acres by the taking of the other ten acres, more or less. Insofar as Mr. Klein's testimony was concerned, the memorandum furnished the jury showed his before and after figures and the net difference.

Both theories of damage were properly and clearly presented to the jury—the one, applicable to the testimony of three witnesses, being based upon there having been no damage to the remaining 1.8 acres by the taking of the other ten, and the other, applicable to the testimony of one witness, reflecting Mr. Klein's view that there had been such damage and his estimate of the amount thereof. In these circumstances we find no error in the court's refusal of a blanket instruction which would have required the jury to use only the before and after taking measure of damages and to apply it to some testimony properly before the jury, to which it was wholly inapposite.

In considering the appellants' objections to rulings on evidence, we have rejected their contentions that the trial court unduly emphasized the possibility that Patapsco Avenue would not be constructed by the City through the subject property.

Having, we believe, considered all of the appellants' numerous and somewhat disjointed contentions, we find no error which would call for reversal of the judgment and accordingly we affirm it.

> *Judgment affirmed; the appellants*
> *to pay the costs.*

---

2. In giving Mr. Klein's figures this memorandum (to which no objection has been made by either party in this Court) inadvertently stated Mr. Klein's valuation of $10,000 an acre as applying to 10.376 acres. His testimony contained in the transcript (but not reproduced in the printed record) shows that his "before" value was based upon 12.176 acres. His "before taking" figure for the whole tract (as to which see note 1) was $110,760, just as stated in the trial judge's memorandum.