## SMALL, ET AL .v. STATE ROADS COMMISSION OF MARYLAND

[No. 237, September Term, 1966.]

*Decided May 12, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*J. Hampton Baumgartner, Jr.,* with whom were *Wilkes & Artis* on the brief for appellants.

*Alger Y. Barbee* and *Guy J. Cicone,* with whom were *Robert C. Murphy, Attorney General* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief for appellee.

McWilliams, J., delivered the opinion of the Court.

Appellants own about 14 acres to the west of the line AB on the sketch made a part of this opinion. The hatched area ABC is the part of their land being condemned by the appellee (the State) for the extension (in Montgomery County) of Connecticut Avenue from University Boulevard north to Viers Mill Road. In addition to the hatched area (0.79 acres, in fee simple) and 0.79 acres in easements, the State is also acquiring denial of vehicular access along the line AB which, of course, will deprive appellants' property of direct access to Connecticut Avenue. The parties stipulated that the fair market value of the 1.58 acres being taken is $6,100. The trial judge held that "the damages to the remainder being the only issue * * * [before him] the factual situation here precludes the award of any damage by virtue of the alleged denial of access."

It is conceded that the extension of Connecticut Avenue to Viers Mill Road along its present route was made known 20 years ago. In July 1947 the developer of the property to the east of appellants' property recorded a plat showing the area ACDEHA to be within "Connecticut Avenue 150' R/W" and dedicating it to public use. The plat bears a legend showing the approval of the Maryland-National Capital Park and Planning Commission on 10 July 1947. The line HE on the plat is the center line of Garret Park Road which was formally abandoned for several hundred feet west of the line HAB in 1957. While the precise condition of this road from H to Viers Mill Road is disputed, we are under the impression it has not been used for some years. As we see the case, however, its condition is unimportant.

In March 1958 the owners of the land lying to the west of the line GE recorded a plat showing the area HEGF to be within

"Connecticut Avenue." It was further described as being "90,-170 square feet Dedicated to Public Use." The line HE as shown thereon is the center line of Garret Park Road. The plat shows the approval, on 12 March 1958, of the Maryland-National Capital Park and Planning Commission, Montgomery County Planning Board.

Appellants acquired their property in September 1958. The State filed this condemnation proceeding in September 1964. This dispute has many other facets but since none of them affects our decision we shall not consider them.

It is conceded that in September 1964, when the State filed the condemnation proceeding, Connecticut Avenue was only a "paper street." Construction had not yet begun. Counsel for the State insist that it "was built over virgin land." Nor is there any dispute about the fact that, prior to September 1964, the County Council denied appellants' rezoning application because the State was "about to create a denial of access" along the line AB.

The five questions presented by each party can be rendered into the single question whether appellants had a right to go from their land to Viers Mill Road over Connecticut Avenue as it is shown on the plat. All agree it could not be done in a motor vehicle but none would deny it could be accomplished on horseback or on foot. We think appellants had that right, and that they are entitled to offer evidence in support of their notions of its value and to have a jury resolve that value.

The dedications above mentioned were made in accordance with the applicable provisions of the Montgomery County Code, §§ 17-7, 70-81(a), 103-9, and 104-11 (1966) [previously designated as § 18-7 (1960); chap. 629, § 1 (1963); § 100-8 (1960); and Ordinance 4-115, § 1, Oct. 17, 1961, respectively]. The approvals of the Maryland-National Capital Park and Planning Commission constituted acceptance by the public. *Maryland-National Capital Park and Planning Commission v. McCaw*, 246 Md. 662, 229 A. 2d 584 (1967); *Whittington v. Good Shepard Church*, 236 Md. 185, 192-94, 202 A. 2d 751 (1964). The appellants succeeded to the rights their predecessors in title acquired by reason of the dedications. *Alan Const. Co., Inc. v. Gerding*, 209 Md. 71, 74-76, 120 A. 2d 353 (1956);

*Perellis v. Mayor & City Council of Baltimore*, 190 Md. 86, 93, 57 A. 2d 341 (1948) ; *Slear v. Jankiewicz*, 189 Md. 18, 23, 54 A. 2d 137 (1947). It is unnecessary for us to examine in detail all of appellants' rights as land owners abutting the 1947 dedication. It is enough that they have the right of egress and ingress over both dedications to Viers Mill Road. *Chapman v. Rogan,* 222 Md. 12, 158 A. 2d 626 (1960).

Both the trial judge and the State place great reliance on our holding in *D'Arago v. State Roads Comm.,* 228 Md. 490, 180 A. 2d 488 (1962). In *D'Arago* the land taken for the new limited access highway traversed the rear of the D'Arago property. Chief Judge Brune, who delivered the Court's opinion, was careful to point out (at p. 494) "that there never was any public road or *right of way"* where the new road was built. (Emphasis supplied.) He went on to say that "although the origin of the right of access to public streets * * * is said to be obscure" an abutting land owner's right to an easement is well established. In the case before us the rights of appellants and their predecessors in title accrued at least 6 years before the taking by the State and, assuming Garret Park Road was open at the time, perhaps as long as 16 years. Judge Brune said in *D'Arago* that (p. 495) "No existing right * * * [had] been taken." That is not the case here.

A few months ago the Supreme Court of Pennsylvania had occasion to consider a situation very much like the case at bar. *Morrisey v. Commonwealth Dept. of Highways,* 424 Pa. 87, 225 A. 2d 895 (1967). There Morrisey's property occupied a corner with frontage on both Frankford Avenue and Carwithan Avenue. The latter, although a legally opened street, had not been paved, graded or physically improved as a street. Morrisey had a gate in the fence along Carwithan Avenue but it was seldom used. The Commonwealth condemned a strip along Carwithan Avenue and denied access to the highway there constructed. The trial judge allowed testimony by experts that Carwithan Avenue was a "paper street" the access rights to which were of slight value and then refused to instruct the jury that, even though seldom used, the taking of the access rights resulted in recoverable damages. Although the trial court was reversed on other grounds, the court observed :

"However, in view of the grant of a new trial, we deem it important to note the references to Carwithan Avenue in the Commonwealth's case as a 'paper street.' Carwithan Avenue was not a 'paper street' but a legally opened street and, except for lack of grading and paving, it occupied the same status as any other legally opened street. To such street condemnees had the *right* of access even though, in fact, such street, because of its lack of grading and paving, was not readily usable. The references to such street as a 'paper street' may well prejudice condemnees. Any such reference upon the retrial of this cause must be avoided for it portrays a non-existent fact as a fact." *Id.* 225 A. 2d at 899.

In *Baltimore v. State Roads Comm.,* 232 Md. 145, 150, 192 A. 2d 271 (1963) we considered the propriety of an appraisal based on an extension of Patapsco Avenue in Baltimore. Chief Judge Brune, for the Court, said:

"The appellants' principal group of objections relating to evidence * * * relate to the proposed extension of Patapsco Avenue through their property. Such an extension appears to have been still only under construction six years after the taking with which we are concerned. The first ordinance looking towards its extension was passed in 1925 and amendatory ordinances were passed in 1930 and 1935. Even the latter of these was adopted at least twenty years before the taking. There was also evidence showing that in 1952 the Commission on City Planning approved the proposed extension and showed it on a plat. The evidence also showed clearly that the Commission in 1954 in planning the Harbor Tunnel approach contemplated carrying the new road over the proposed extension of Patapsco Avenue. * * *."

* * *

"Mr. Philip Edward Klein, an appraiser employed by one or both of the appellants, testified that the Patapsco Avenue extension would go through the ap-

pellants' property for about 750 or 800 feet, giving frontage on each side. He further testified (over objection by the Commission) that in arriving at the value of $10,000 an acre for the appellants' land at the time of the taking, he included $2,500 an acre 'for the present worth of future benefits of Patapsco Avenue.' The court's instructions pointed out a difference of opinion as to whether the prospect of the extension of Patapsco Avenue affected the market value of the property, and they permitted the jury to take the possible extension of that street into account and to make such allowance therefor as the jury might think proper. We think these instructions were fair and proper." *Id.* at 150-51.

The appellants are better off than the property owner in *Baltimore* in at least one respect. They abut an accepted dedication. In *Baltimore* the property owner abutted nothing and Patapsco Avenue was little more than a promise and a hope. For the reasons stated the judgment of the trial court will be reversed and the case will be remanded for further proceedings. not inconsistent with the views herein expressed.

> *Judgment reversed.*
> *Remanded for further proceedings*
> *not inconsistent with the views*
> *expressed in this opinion.*
> *The appellee will pay the costs.*