THE MAYOR AND COUNCIL OF ROCKVILLE
*v.* GEERAERT ET AL.

[No. 417, September Term, 1970.]

*Decided May 5, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Roger W. Titus, City Attorney,* with whom was *Vincent E. Ferretti, Jr., Assistant City Attorney,* on the brief, for appellant.

No brief filed on behalf of appellees.

BARNES, J., delivered the opinion of the Court.

The appellees, Joseph L. Geeraert et al. filed a petition in the Circuit Court for Montgomery County on October 6, 1964, to seek abandonment of a portion of a subdivision known as Twinbrook Forest pursuant to the provisions of Section 17-7 of the Montgomery County Code (1965). The Chancellor (Pugh, J.) concluded, *inter alia,* that the offer to dedicate had never been accepted by the appellant, The Mayor and Council of Rockville (Rockville or City). On November 10, 1970, the Chancellor passed a final decree declaring that all dedication to public use of the land involved in the petition had been abandoned and was free and clear of any public right, claim, title and use. The decree also provided that the land involved reverted to its status as to ownership as existed prior to the recordation of the subdivision plat. In our opinion, the Chancellor was in error in holding that the offer to dedicate had not been accepted and that there was no damage to other persons; and we shall reverse the decree of November 10, 1970, finding it unnecessary to pass upon remaining alleged error urged by Rockville.

The facts are not in dispute, the parties having agreed pursuant to Maryland Rule 828 g upon a statement of undisputed facts.

In June of 1964, two tracts of land in Rockville were owned, respectively, by two of the appellees, the Twin-Brook Development Corporation (a Maryland Corporation controlled by Joseph L. Geeraert) and Joseph L. Geeraert, individually. A portion of the two tracts abutted Norbeck Road (also known as Baltimore Road). Prior to the recordation of the subdivision plat, mentioned later, Mr. Geeraert and his engineers had held discussions with the State Roads Commission in regard to plans to widen Norbeck Road, a 30 foot wide road existing and maintained by that Commission for many years prior to the discussions as a part of Maryland Route 28, as it passed the two tracts. A subdivision plat of the two tracts was prepared by the owners which divided the two tracts into Blocks M and N and part of Blocks K and L of a subdivision known as "Twinbrook Forest." Certain areas designated as Norbeck Road, Fletcher Place, Dean Drive, Bradley Avenue and Broadwood Drive were delineated on the subdivision plat, dated June 3, 1954. This subdivision plat had on it an "Owner's Dedication" clause with the signatures of the property owners which stated that the owners "hereby adopt this plan of subdivision, establish the minimum building restriction lines and dedicate the streets to public use." The plat, designated as Plat No. 3753, contains the following endorsement attested by the City Clerk:

> "Approved by Mayor & Council, Rockville, Md., without commitment as to water, sewer and streets. Date: July 15, 1954."

There was also a certificate by the engineer of the owners, dated July 9, 1954, which states, in relevant part, that "the total area of streets dedicated by this plat is 4.8735 acres of land."

The subdivision plat, containing the endorsements

mentioned, was duly recorded among the land records of Montgomery County as Plat No. 3753.

The testimony in the lower court indicated that the computation of the engineer of 4.8735 acres of dedicated streets included the land lying north of Blocks M and N of the subdivision and designated as Norbeck Road. Neither Mr. Geeraert nor Twin-Brook Development Corporation wished to dedicate the area designated as Norbeck Road on the subdivision plat; but in order to gain approval of the plat, he and the corporation were required to dedicate this land for public use.

After the subdivision plat was recorded, all of the lots shown on the plat were built upon and sold by the respective owners to individual homeowners, except an out lot in Block N.

In 1964 Twin-Brook Development Corporation deeded a small portion of the area designated on Plat 3753 as Norbeck Road to the remaining appellees, Edward W. Schultze and George W. O'Keefe, and their wives. The area so deeded also included a larger area labeled "Future Development" on a subdivision plat of land to the east of Plat 3753, bearing the approval of Rockville and recorded in 1957.

In the petition filed by the appellees on October 6, 1964, the petitioners seek to relieve from dedication all of the land on Plat 3753 designated as Norbeck Road with the exceptions of (1) an area approximately 15 feet wide which has been paved, (2) an additional unpaved area approximately 15 feet wide (the total area of (1) and (2) consisting of 11,019 square feet) and (3) an area to accommodate the intersection of Norbeck Road and Broadwood Drive, the net computed area consisting of 50,046 square feet (the subject property). Twin-Brook Development Corporation had agreed in 1964 to sell the subject property to Schultze and wife and O'Keefe and wife.

Approximately 10 years after Plat 3753 was recorded, the State Roads Commission altered its plans for the

widening of Norbeck Road as it passed through the sub-division and decided to construct Maryland Route 28 through another area of Rockville. Since that time, Norbeck Road has become a City street of Rockville with a recommended paved width of 36 feet as contrasted with the present 30 feet. Rockville officials testified that in 1967 the City had formulated plans to construct a pedestrian walkway and bicycle path on the subject property and that funds had been appropriated for that purpose.

From the time of the recordation of Plat 3753 in 1954 until 1964, Mr. Geeraert or one of his corporations paid taxes to Rockville (which had billed Twin-Brook Development Corporation in 1964 for $10.82 for taxes, based on assessments prepared by the State Department of Assessments and Taxation) for a portion of the dedicated area north of Blocks M and N. Mr. Schultze testified that he had paid taxes on the small area deeded to him in 1964 for two or three years prior to 1967.

During the 10-year period, 1954-1964, use was made of the dedicated but unpaved land north of Block N by persons walking in an east-west direction as evidenced by several well-defined paths. Another path running in a north-south direction at the westerly end of the subject property indicates a similar use. Although there were some obstructions in the area, the paths continued to be used by small children and school children going to or from various elementary, junior high and high schools in the area. There was evidence in the lower court that on one occasion, Rockville sent a maintenance crew to the area that moved brush, trees, logs, leaves and trash from the area of the east-west paths. Except for these uses and activities, the subject property can be generally described as a wooded area sloping downhill from the northern line of the lots in the subdivision to the southern line of the paved surface of Norbeck Road. When Plat 3753 was recorded in 1954, the most northerly part of the dedicated area was paved and in use as a part of Norbeck Road.

In 1962, Mr. Geeraert requested Rockville to give him a quitclaim deed of the portion of the subject property subsequently deeded to the Schultzes and the O'Keefes. The then City Manager and Council recommended that the City consent to the abandonment of the Schultze and O'Keefe area as requested, after the filing of an appropriate suit with service upon all other persons who might have a legal interest had been joined as parties. Mr. Schultze testified that he had seen this memorandum prior to settlement for the areas deeded to him and to Mr. O'Keefe. The owners of the lots in the subdivision in Blocks M and N neither joined in the Petition for Abandonment nor were they served. An order of publication was duly published in a newspaper of general circulation in Montgomery County.

After the abandonment proceedings were filed, the City at first filed an answer consenting to the abandonment, but later filed an amended answer opposing the abandonment. Testimony was taken before an Examiner on two occasions (in 1966 and 1967). Arguments of counsel were heard by the Chancellor who viewed the subject property. Thereafter, the Chancellor filed a written opinion on September 28, 1970, and the decree of November 10, 1970, was later signed and filed. Rockville took a timely appeal from this final decree.

Rockville briefed and argued before us three alleged errors of the Chancellor:

> 1. The offer of dedication had been accepted by Rockville, the dedication being a *statutory* dedication and not a *common law* dedication as the Chancellor erroneously concluded.

The Chancellor erred in concluding:

> 2. "[T]hat no damage can in anywise be sustained by any person if such abandonment is permitted"; and
> 3. The subject property should revert to the

appellees rather than to the abutting landowners in view of the provisions of Code (1957), Art. 21, § 107.

As we have indicated, we agree with the position of Rockville that there was an acceptance of the offer of dedication by Rockville and that the lower court was clearly in error in finding that no damage can be sustained by any persons if the proposed abandonment were permitted; we find it unnecessary to pass upon the remaining third error alleged by the appellant.

Since our decision in *Whittington v. Good Shepherd Evangelical Lutheran Church of Palmer Park*, 236 Md. 185, 202 A. 2d 751 (1964), it has been established in Maryland that proceeding under an appropriate statute, the *recordation* of a subdivision plat, containing an *approval* of the appropriate public officials, constitutes both a dedication *and acceptance* of the areas dedicated to public use without more. We approved and followed *Whittington* in *Small v. State Roads Commission*, 246 Md. 646, 229 A. 2d 408 (1967) and again in *Maryland-National Capital Park and Planning Commission v. McCaw*, 246 Md. 662, 673, 229 A. 2d 584, (1967), stating in *McCaw* "that under the statute, the dedication to the public is complete and the interest of the public has vested when the [approved] subdivision plat is filed." *Cf. Town of Glenarden v. Lewis*, 261 Md. 1, 273 A. 2d 140 (1971).

The applicable statute in the instant case, § 17-7 of the Montgomery County Code (1965), provides that:

"When the [approved] plats are so recorded, those portions. . .designated on the plats as . . .streets. . . shall be and the same are hereby declared to be forever dedicated to public use."

In *Small, supra,* at 648 this Court stated that the dedications there involved under § 17-7, 70-81 (a), 103-9 and 104-11 of Montgomery County Code were accepted by the public upon approvals of the Maryland-National Cap-

ital Park and Planning Commission, citing *McCaw* and *Whittington, supra.* Since Rockville is excluded from the Maryland-National Capital Park district under § 70-29 of the Montgomery County Code only § 17-7 applies and public acceptance of the dedication was had upon the approval of Rockville and the filing of the plats in the present case.

Section 17-7 of the Montgomery County Code (1965) also provides in effect that the maker of a plat of a subdivision, his heirs and assigns, has the right to petition the Circuit Court for leave to abandon a subdivision or any part of it and reconvert the same into one tract or parcel and the Circuit Court, if convinced upon proof that no damage can in anywise be sustained by persons other than the petitioner, shall have the power to pass an order authorizing and empowering the petitioner to abandon the subdivision, in whole or in part.[1] As we have indicated, the Chancellor found from the evidence that no such damage can occur; but in this finding, we are of the opinion that the Chancellor was clearly in error.

We held in *Hackerman v. Mayor & City Council of Baltimore,* 212 Md. 618, 130 A. 2d 732 (1957) that in the common law dedication involved in that case, a dedication plat showing streets binding on both the front and rear of a lot constitutes an offer of dedication of both streets thus both streets must meet the "no damage test." It cannot be said, in our opinion, that no damage can be sustained by an abutting property owner whose rear property line abuts the dedicated right-of-way sought to be abandoned. In *Small v. State Roads Commission,* 246 Md. 646, 229 A. 2d 408 (1967), *supra,* we held that property owners could obtain compensation in eminent domain proceedings for the loss of the right to

---

1. We were informed at argument by the City Attorney that Rockville, subsequent to the initiation of these proceedings, had enacted its own procedure for abandonment pursuant to its home rule powers under Article XI-E of the Maryland Constitution, but allowed this pending case to be concluded under the provisions of the Montgomery County Code.

travel to and from their property on horseback or on foot on what had theretofore been a *paper* street abutting their property. In the case at bar, the street *exists* and only a partial abandonment of the original dedication is sought. Upon a reversion of the subject property to the appellees as decreed by the Chancellor (upon the propriety of which we express no opinion), the abutting lot owner would be denied his rear access to an *existing*, and not a *paper* street—obviously an even more serious damage.

In addition to this possible damage, various members of the public may be damaged as we indicated in *Whittington, supra.* In *Whittington,* the area in question was used as a route for children walking to and from an elementary school which we held, *inter alia,* to constitute a use by members of the public, the deprivation of which *can* result in damage. In the present case, the evidence establishes that there are *several* well-defined east-west paths and one north-south path, used not only as a route by elementary school children but by junior high and high school children as well. It seems apparent that the deprivation of this use not only *can* cause damage to those children, but it most assuredly *will* cause such damage.

In the instant case not only does the evidence indicate that damage *can* (or *will*) result to abutting property owners and the children mentioned, but it also shows that the City itself could be damaged if the abandonment were granted. In *McCaw, supra,* we indicated that the "no damage" test was not met when a governmental agency planned to use the right-of-way, with other lands, for a regional park, the possibility of damage being that a higher price might be required in later condemnation proceedings for the park if the abandonment were granted. In the instant case, the evidence indicates that the proposed and authorized pedestrian walkway and bicycle path are within the scope of the present dedication and no public expenditure would be required for acquisi-

tion of a right-of-way for them. If the requested abandonment were permitted, the City would most likely be required to acquire the land—or an easement—at a substantial expenditure of public money. For these reasons, it is our opinion that the Chancellor was clearly in error in finding "no damage can in anywise be sustained by any persons if the abandonment is permitted."

*Decree of November 10, 1970,*
*reversed, the appellees to*
*pay the costs.*